Ex parte Ioannis (John) GNESOULIS, Relator.

No. 1229.

Court of Civil Appeals of Texas, Houston (14th Dist.)

July 2, 1975.

Rehearing Denied July 23, 1975.

Marvin Schulman, Houston, for appellant.

Gus J. Zgourides, Bryan Coleman, Houston, for appellee.

COULSON Justice.

A petition for writ of habeas corpus was filed with this Court by Ioannis (John) Gnesoulis (hereinafter relator). The relator complains that he has been illegally confined and restrained of his liberty by the Sheriff of Harris County, Texas, by virtue of an order of commitment issued by the Judge of the Court of Domestic Relations # 4, Harris County, Texas.

Relator was held in contempt of court for failing to make payments under the terms of temporary orders of the court effective during the pendency of the divorce, and for breach of a restraining order enjoining the parties from harming one another in any manner during the pendency of the divorce. As punishment relator was fined $100 for his acts which were calculated to cause harm to his wife, Georgia Gnesoulis, and he was ordered confined in the Harris County Jail until he purges himself of contempt by making payments in the amount of $890.19 in compliance with the temporary orders together with all costs of court, the $100 fine, and attorney's fees in the amount of $200.

The court's first temporary order in the matter of the marriage of Georgia Gnesoulis and John Gnesoulis was entered on March 15, 1973, by agreement between the parties. During the pendency of the divorce, as temporary alimony and child support, John Gnesoulis was ordered to pay, make current, and keep current, the payments on the home, insurance, maintenance fund, taxes, utilities, telephone bills, hospitalization, car payments, auto insurance, doctor, dental and pharmacy bills, and $325 per month. Subsequently, on July 31, 1973, the court entered an order reducing the monthly payments to be made by relator from $325 per month to $250 per month. However, all other provisions of the March 15, 1973, order remained unchanged. The trial on the merits of the divorce was had on April 23, 1974. The attorneys, thereafter, presented briefs relating to property and made oral arguments. On February 28, 1975, the trial judge sent a letter to the attorneys representing both parties stating that:

I have concluded that Judgment should be entered in the above cause as follows:

1. The parties are granted a divorce and custody of the minor child is awarded to the mother. The father shall have visitation on the first and third weekends from 6:00 P.M. Friday to 6:00 P.M. Sunday, three weeks during the months of June, July or August with 30 days notice, December 25th at 1:00 P.M. to December 31st at 6:00 P.M., the eve of the child's birthday from 4:00 P.M. to 7:00 P.M. and Father's Day from 9:00 A.M. to 5:00 P.M., if that day does not fall on one of the regular visitation periods. The father is ordered to contribute the sum of $450.00 per month for the support of his minor child, until the child shall attain 18 years of age or until further orders of the Court.

2. The wife is awarded as her separate property and estate the following:

A. The Homestead at 12362 Honeywood Trail, Houston, Texas, and she shall pay and hold the husband harmless therefrom.

B. The Cutlass automobile now in her possession. She is to pay the balance due, if any, thereon.

C. A Judgment in the sum of $75,-000.00 to be secured specifically by husband's undivided one-third interest in the 2.9 acres on Spencer Highway and husband's Stock in JFA.

D. Attorneys for wife are awarded a Judgment in the sum of $10,000.00 against the husband, same representing the reasonable value of the legal services rendered by them in this cause.

3. The husband is awarded as his separate property and estate the following:

A. The balance of all the separate and community property which he ownes (sic) or claims, save and except that awarded to wife above.

4. The sum of $75,000.00 awarded to wife above shall be payable at the rate of $500.00 per month with the Judgment providing that in the event that any such installment is 30 days over due that execution shall issue for the then balance of said amount.

5. The husband shall be entitled to take the minor child as a dependent for Income Tax purposes.

6. The husband shall be responsible for and liable for all Income Tax for the year 1974, it being understood that those sums withheld from the wife's salary are not refundable to her, but is to be applied upon the community income liability for the year 1974. Each party to pay Income Tax on sums each earn for the year 1975.

7. All costs of Court are assessed against the husband.

If the parties are unable to agree upon the form of Judgment, I request that each party submit a proposed Judgment to the Court.

If either of you gentlemen care to argue about the substance of the Judgment, please be advised that I will not consider same until after the formal Judgment is entered. You will be given an opportunity to present your views upon Motion for New Trial.

An unsigned copy of the letter obtained from the court's file, but, without a file mark of the clerk of the court, was introduced into evidence at the contempt hearing.

After receipt of the letter, the relator terminated all payments under the temporary orders. He thereafter paid only the $450 per month child support payment as provided for in the letter of February 28, 1975, and disregarded all other provisions of said letter. A complaint in contempt was filed by Georgia Gnesoulis alleging that relator was in contempt of court for failure to make temporary alimony and child support payments during the pendency of the divorce and for failure to comply with the temporary orders to make mortgage payments on the parties' homestead, tax and utility bill payments, automobile payments, and premium payments on several insurance policies held by the parties. Georgia Gnesoulis also sought to have the relator held in contempt for abusing her physically and assaulting her person. A hearing was had on the contempt complaint on May 29, 1975. After hearing the evidence, the trial court issued its order of commitment pursuant to its determination that the relator was in contempt of court. The commitment order was executed and the relator was taken into custody and held until released on bond after this Court granted leave to file this petition for writ of habeas corpus.

The primary thrust of the relator's application for writ of habeas corpus is that the trial court's order holding him in contempt is void because the letter written by the trial judge on February 28, 1975, constituted a rendition of judgment which terminated the effect and force of the temporary orders under which the relator was held in contempt.

We hold that as a matter of law the letter written by the trial judge on February 28, 1975, did not constitute a rendition of judgment in this case. The rendition of a judgment is effected when the trial court in open court declares the decision of the law upon the matters at issue. It is distinguishable from the entry of judgment which is a purely ministerial act by which the judgment is made of record and preserved. As has been often stated, the rendition of judgment may be oral as well as written. A judgment can be rendered orally in open court, or by written memorandum signed by the judge and delivered to the clerk for filing, signifying to the clerk in his official capacity and for his official guidance the sentence of law pronounced by the trial judge. *Comet Aluminum Company v. Dibrell*, 450 S.W.2d 56 (Tex.Sup.1970); *Knox v. Long*, 152 Tex. 291, 257 S.W.2d 289 (1953); *Coleman v. Zapp*, 105 Tex. 49, 151 S.W. 1040 (1912). There is no indication in the record that this letter from the trial judge was ever filed with the clerk. Further, it is obvious from the very general terms of the provisions, including the fact that it does not specify which party was to be granted the divorce, that the trial judge intended this letter to be no more than a guideline upon which the attorneys for both parties were to draw up and submit their proposed judgments. In spite of the fact that the trial judge indicated that he would not hear argument about the substance of the judgment until the entrance of a final judgment and motions for new trial filed subsequent thereto, the judge left a great deal of room for refinement and definition of the terms of the judgment as proposed in the letter. It is the useful prerogative of the trial judge to communicate, both orally and in writing, with the attorneys of the parties in crystalizing the provisions of a judgment prior to rendition. *Marulanda v. Mendez*, 501 S.W.2d 366 (Tex.Civ.App.—San Antonio 1973, writ ref'd n. r. e.).

The relator's second ground for attack upon the validity of the contempt order is that the letter of February 28, 1975, when taken together with the orders of March 15, 1973, and July 31, 1973, creates uncertainty as to the obligation owed by the relator which precludes the finding of contempt.

The relator, on the advice of his attorney, affirmatively decided to abide by the child support provisions of the February 28, letter, and to disregard all previous orders of the trial court and all other provisions of the letter. At no time has the relator contended that the letter constituted any more than a rendition of judgment. Vernon's Tex.Family Code Ann. § 3.59 (1975) states that: "[a]fter a petition for divorce or annulment is filed, the judge, after due notice may order payments for the support of the wife, or for the support of the husband if he is unable to support himself, until a final decree is *entered*." (Emphasis ours.) Even had the letter of February 28, 1975, constituted a rendition of judgment, it would not have suspended the force and effect of the temporary orders issued by the trial court in 1973. Presumably, those orders would be effective until judgment had been entered. The entrance of judgment is the ministerial act by which a permanent evidence of the judgment is created. *Knox v. Long, supra*; *Coleman v. Zapp, supra*. No ambiguity was created because, as a matter of law, the February 28th letter could have had no effect upon the validity of the earlier temporary orders.

The relator's final contention concerning the validity of the contempt order is that "the affidavit of contempt filed with the court charges relator with multiple offenses and is therefore void and violative of due process of law."

Relator contends that the affidavit in question did not meet the provisions of Vernon's Tex.Code Crim.Proc.Ann. art. 21.24 (Supp.1975). In support of his position the

relator cites *Ex Parte Genecov*, 143 Tex. 476, 186 S.W.2d 225 (1945). In that case, the Supreme Court determined that the district court had the power to assess punishment for more than one act of contempt in a single proceeding based upon allegations contained in a single affidavit. In reaching that conclusion the Supreme Court first determined that there had been no violation of due process. However, the court discussed possible statutory support for the position taken. The court noted that contempt proceedings are "somewhat criminal in nature" and analogous to a misdemeanor. At the time of the *Genecov* decision, in misdemeanor cases, separate offenses could be charged in separate counts and the whole matter disposed of in one trial. However, that rule was changed by the Texas Legislature in 1973 by the amendment of Article 21.24. It is now necessary in misdemeanor cases to charge separate offenses in separate informations. The petitioner reasons that, because of this change, it is now necessary that affidavits in contempt proceedings comply with the new provisions of Article 21.24. We find this contention to be without merit.

■ As noted in *Genecov* contempt actions are *somewhat* criminal in nature. It is not necessary that the procedures followed in a contempt proceeding strictly conform to criminal procedure. The proper rule to be applied in this case is the standard of due process. We find, as the Supreme Court found in *Genecov*, that the use of a single affidavit which sets out specific acts of contempt in individual paragraphs does not violate the principles of due process. *Ex parte Henderson*, 512 S.W.2d 37 (Tex.Civ.App.—El Paso 1974, no writ); *Ex parte Loreant*, 464 S.W.2d 223 (Tex.Civ. App.—Houston [1st Dist.] 1971, no writ). Under the present practice in Texas, the respondent in a contempt proceeding can be given adequate notice as to which acts or omissions are the basis of the contempt complaint. It would be needless formalism to require separate affidavits concerning each alleged act of contempt. In a constructive contempt proceeding, the requirements of due process are met if the affidavit in contempt is specific and clearly informs the respondent of the charges against him. The affidavit in this case clearly meets those standards.

Relator's application for writ of habeas corpus is denied and he is ordered remanded to the custody of the Sheriff of Harris County, Texas.