Salvador ORTIZ, Appellant,

v.

O. J. BECK & SONS, INC., Appellee.

No. 1643.

Court of Civil Appeals of Texas,
Corpus Christi.

Dec. 18, 1980.

William D. Bonilla, Bonilla, Read, Bonilla & Berlanga, Inc., Corpus Christi, for appellant.

Richard J. Hatch, Mahoney, Shaffer, Hatch & Layton, Corpus Christi, for appellee.

## OPINION ON APPELLEE'S PLEA TO THE JURISDICTION AND MOTION TO DISMISS

PER CURIAM.

The jurisdiction of this Court has been challenged by appellee in a plea to the jurisdiction and motion to dismiss the appeal. Appellee asserts that the appeal was not timely perfected because the appeal bond was filed 31 days after rendition of judgment and a motion for new trial filed 11 days after rendition of judgment was ineffective to extend the time for perfection of the appeal. In support of its position, appellee has brought forward a transcription of a hearing on appellant's motion for nunc pro tunc correction of judgment. The transcript, however, contains an order granting the motion and correcting the judgment to show it was actually signed one day later than the date shown on the judgment.

It is well settled that a trial judge can amend a judgment prior to the time that it becomes final. *Mathes v. Kelton*, 569 S.W.2d 876 (Tex.1978); *Transamerican* Leasing Co. v. Three Bears, Inc., 567 S.W.2d 799 (Tex.1978). After the judgment becomes final, it can be altered only if the evidence shows that a clerical error, rather than a judicial error, caused the official records of the court to reflect inaccurately the judgment actually rendered. *Comet Aluminum Company v. Dibrell*, 450 S.W.2d 56 (Tex.1970), and cases cited therein; *Perry v. Nueces County*, 549 S.W.2d 239 (Tex. Civ.App.—Corpus Christi 1977, writ ref'd n.r.e.); Rule 316, T.R.C.P.; Reavley and Orr, Trial Court's Power to Amend Its Judgments, 25 Baylor L.Rev. 191 (1973).

Dates contained in judgments have been held on many occasions to be the type of errors that are correctable by judgment nunc pro tunc. *Hays v. Hughes*, 106 S.W.2d 724 (Tex.Civ.App.—Austin 1937, writ ref'd); *Nolan v. Bettis*, 562 S.W.2d 520 (Tex.Civ. App.—Austin 1978, no writ); *Wiegand v. Riojas*, 547 S.W.2d 287 (Tex.Civ.App.—Austin 1977, no writ); *City of San Antonio v. Terrill*, 501 S.W.2d 394 (Tex.Civ.App.—San Antonio 1973, writ ref'd n.r.e.); *Capitol Life Insurance Co. v. Rutherford*, 468 S.W.2d 535 (Tex.Civ.App.—Houston [1st Dist.] 1971, no writ).

In this case, the resolution of the jurisdictional issue requires a determination of when the judgment was actually rendered. At the outset, it is helpful to clarify the separate acts of rendition, signing, filing, and entry of judgments. Imprecise use of these terms causes confusion, and should be avoided. See *Burrell v. Cornelius*, 570 S.W.2d 382 (Tex.1978).

"Rendition" is a judicial act by which the court settles and declares publically the decision of the law upon the matters at issue. This occurs when the decision is officially announced, either orally in open court, or by some memorandum filed with the clerk. *Comet Aluminum Company v. Dibrell*, 450 S.W.2d 56, 58 (Tex.1970); *Knox v. Long*, 152 Tex. 291, 257 S.W.2d 289, 292 (1953); *Coleman v. Zapp*, 105 Tex. 491, 151 S.W. 1040, 1041 (1912).

"Signing" occurs when the judge actually signs the written draft of the judg-

ment, and this is usually deemed to be the date of rendition for purposes of calculating appellate time limits. *Burrell v. Cornelius,* 570 S.W.2d 382 (Tex.1978); Rule 306a, T.R. C.P.

"Filing" occurs when the signed draft of the judgment is placed in the custody of the clerk of the trial court for inclusion with the papers in the cause.

"Entry" refers to the clerk's act of placing a copy of the judgment in the official record of the court, which is its minutes. *Burrell v. Cornelius,* supra; *Sigler v. Realty Bond & Mortgage Co.,* 135 Tex. 76, 138 S.W.2d 537 (Tex.Comm.App.1940, opinion adopted); Reavley and Orr, Trial Court's Power to Amend Its Judgments, 25 Baylor L.Rev. 191 (1973); Tex.Rev.Civ.Stat.Ann. arts. 1899 and 1943 (1964).

These four separate and distinct acts have different purposes. They could occur on the same or different dates. They are performed by at least two different court officials.

In this appeal, the pertinent events are as follows:

September 24, 1979 Date shown on judgment as "signed and entered"

September 25, 1979 Date on letter of the trial judge addressed to the attorneys announcing the decision of the trial court and that judgment ". . . will be entered as of *this date.*" (emphasis supplied)

October 5, 1979 Defendant's motion for new trial filed.

October 25, 1979 (a) appeal bond filed, (b) hearing on defendant's motion for new trial and on defendant's motion for nunc pro tunc correction of judgment, and

(c) order signed amending judgment to reflect a date of September 25, 1979, instead of September 24, 1979.

■ The purported nunc pro tunc correction of judgment occurred within 30 days of September 25, 1979, the date the trial judge determined that the judgment was actually signed. Therefore, it was not a true nunc pro tunc judgment because the trial court

had plenary power to amend and/or correct his judgment within this 30 day time period as such. Rule 329b(5), T.R.C.P.

The testimony of the witnesses at the October 25 hearing shows that no one, at that particular time, had a then present recollection of the actual date the judgment was signed, entered, or filed. However, the record does contain a letter dated September 25, 1979, and signed by the trial judge which informed the attorneys of his decision in the case on the merits and stated that the judgment would be ". . . *entered as of this date.*" (emphasis supplied)

At the hearing, testimony was elicited from the deputy district clerk concerning the filing and entry of the judgment, from the trial judge who signed the judgment dated September 24 and the letter dated September 25, and from the court coordinator who typed the letter. The court coordinator testified that she customarily typed and mailed the judges letters the day they are dictated, but that she had no independent recollection concerning this particular letter. The deputy clerk testified that the judgment was entered in the minutes of September 24, 1979, because the judgment bore that date, but she had no recollection and no means to determine on what date the act of entry occurred. She further testified that judgments and orders are not filed or marked in any way to indicate when they come into the actual custody of the clerk. There was no independent recollection by the trial judge, court coordinator, or deputy clerk of when the judgment was signed, filed, or entered, or when notations on the docket sheet and file jacket were made.

■ We do find, however, that the judge's signature on the letter is evidence that the trial judge personally saw the letter bearing the September 25 date, and that the facts in the letter are true and correct. There is nothing in the record to dispute these facts. The judge was therefore entitled to find, as a fact, that the judgment was incorrectly dated. We conclude that the order correcting the date of signing from September 24 to September 25 was

valid, and the starting date for all appellate steps commenced September 25, 1979.

Even if the trial judge was mistaken in this determination and the judgment had actually been signed on September 24, we would reach the same conclusion.

█ It is undisputed that no announcement of the decision was made in open court. To determine the date of rendition, therefore, we must look to the date that a written memorandum of the judge's decision was filed with the clerk or made public otherwise. *Comet Aluminum Company v. Dibrell,* supra; *Knox v. Long,* supra; *Coleman v. Zapp,* supra. If the decision was announced by memorandum filed prior to the date the judgment was signed, then the filing date becomes irrelevant for purposes of appeal. Generally the appellate time table depends only on the date of signing. *Burrell v. Cornelius,* supra; Rule 306a, T.R.C.P. If, however, the signing occurred prior to "announcement" of the decision, then we must look beyond Rule 306a to avoid the incongruous result of a ruling that the judgment was rendered for appeal purposes before it was rendered at all.

█ The requirement that the decision be "announced" is an integral and necessary part of the concept of rendition. Otherwise, the time for appeal could expire before a judgment or order became a matter of public record, and a signed judgment or order which was lost or misplaced prior to its public announcement could foreclose a direct appeal. The public nature of rendition underlies the principle that charges parties and lawyers alike with notice of all orders and judgments rendered in a case. See *University of Texas v. Morris,* 163 Tex. 130, 352 S.W.2d 947 (1962); *Mayad v. Rizk,* 554 S.W.2d 835 (Tex.Civ.App.—Houston [14th Dist.] 1977, writ ref'd n.r.e.); *Pentikis v. Texas Electric Service Company,* 470 S.W.2d 387 (Tex.Civ.App.—Fort Worth 1971, writ ref'd n.r.e.).

█ Here, none of the court officials was able to determine when the decision became a matter of public record. However, a decision announced by letter from the court to the parties when no announcement is made in open court or any memorandum filed with the clerk, would constitute rendition. See *Kostura v. Kostura,* 469 S.W.2d 196 (Tex.Civ.App.—Dallas 1971, writ dism'd).

█ The date appearing on the judgment did not evidence actual rendition in this instance because it lacked the necessary element of public announcement. Rendition is, necessarily, a prerequisite before the date of signing can become a conclusive starting point for appeal purposes.

We conclude, therefore, that the judgment was not announced and therefore not rendered, until September 25, 1979. The motion for new trial filed October 5, 1979, and the appeal bond filed October 25, 1979, were timely. Appellee's motion to dismiss for want of jurisdiction is denied.

## OPINION

NYE, Chief Justice.

This appeal results from a suit instituted by Salvador Ortiz, against O. J. Beck & Sons, Inc. for the alleged failure to comply with an oral agreement to clear Ortiz' land. Beck filed a counterclaim to recover the amount alleged to be due and owing him for the services rendered in accordance with the oral agreement. Trial was to a jury, which returned a verdict in favor of Beck's counterclaim. Judgment was then entered on the jury's verdict. Ortiz appeals.

During the latter part of 1977, Ortiz and Beck entered into an oral agreement whereby Beck was to clear and improve approximately 20 acres of Ortiz' land. Beck was informed that Ortiz was seeking matching funds from the Federal A.S.C.S. Program. The work, according to the agreement, was to be performed in compliance with the A.S.C.S. requirements. The job involved brush and root control and other related work. On completion of the job, Beck billed Ortiz for $5,353.32 for the work performed. Ortiz refused to pay this amount, but sent Beck a check for $2,700.00. A few days later, Ortiz wrote Beck and informed him that he had requested his bank to stop

payment on the check. He stated he would reissue the check when the balance of the work was finished. Beck then wrote a demand letter to Ortiz for full payment, stating that if not paid, suit would be filed and a lien would be filed on the property. Two days later, Ortiz filed suit against Beck, alleging breach of the agreement. Beck then filed its counterclaim for services rendered under the oral agreement.

The jury, in response to special issues, found: 1) that Beck entered into an agreement with Ortiz to do brush and root control, and other related work to clear and improve approximately 20 acres of Ortiz' land; 2) that the effective date of the agreement was October 13, 1977; 3) that Beck did not agree to do the work on a per-acreage basis; 4) conditionally submitted and not answered; 5) that the work was completed in accordance with the terms of the agreement; 6) was conditionally submitted and not answered; 7) Beck did not damage a water line during the course of the work; 8) and 9) were conditionally submitted and not answered; 10) that the parties agreed that Beck would be paid for work performed on an hourly basis; 11) the reasonable and customary cash value of the services rendered by Beck to Ortiz in regard to the 20 acres in question was $5,353.32; 12) and 13) were conditionally submitted and not answered; 14) that reasonable attorney's fees for: a) services in representing Beck in the preparation and trial of the cause was $3,840.00; b) for services if appealed to the Court of Civil Appeals was $1,500.00; and c) for services if case appealed to the Supreme Court was $1,500.00.

■ Ortiz contends in his first point of error that the trial court erred in failing to submit his requested special issues[1] regarding the terms of the agreement. Rule 279,

T.R.C.P., requires, among other things, that the trial court, in cases similar to this case, submit the controlling issues made by the written pleadings and the evidence. Ortiz' requested issues 2 and 8 duplicated two of the special issues submitted by the trial court. Requested issues 3 and 4 were not controlling issues, and Ortiz' requested issues 1, 5, 6, and 7 were actually various shades of the issues submitted by the court concerning the terms of the contract. There was no error in the manner in which the trial judge submitted this case to the jury. *Holmes v. J. C. Penney Company,* 382 S.W.2d 472 (Tex.1964); *Prudential Insurance Company of America v. Tate,* 162 Tex. 369, 347 S.W.2d 556 (1961); *Vahlsing Christina Corp. v. Ryman Well Service, Inc.,* 512 S.W.2d 803 (Tex.Civ.App.—Corpus Christi 1974, no writ).

■ Next, Ortiz contends that the trial court erred in failing to submit a special issue regarding his request for attorney's fees. Rule 277, T.R.C.P., provides in part that "in all jury cases, the court . . . shall submit the cause upon special issues . . . that are raised by the written pleadings . . . ." Ortiz had no written pleadings relevant to the issue of his attorney's fees. *Matthews v. General Accident Fire & Life Assur. Corp.,* 161 Tex. 622, 343 S.W.2d 251 (Tex.Sup.1961); *Freitas v. Twin City Fisherman's Cooperative Ass'n.,* 452 S.W.2d 931 (Tex.Civ.App.—Corpus Christi 1970, writ ref'd n.r.e.).

■ Ortiz contends alternatively that the trial court erred in not allowing him to file a trial court amendment to cure his lack of pleading. Our review of the record fails to show that Ortiz requested a trial amendment. Having failed to make a request for a trial amendment, an appellant cannot complain of such failure on appeal. *Ameri-*

1. (1) did the appellee do brush control, root control, and other related activities in accordance with the specifications and regulations of the United States Department of Agriculture A.S.C.S. program; (2) did appellee agree to do the work for a cost of $135.00 per acre; (3) did appellee agree to begin such work within 10 days; (4) did appellee agree to complete such work within fifteen working days after com-

mencement of such work; (5) was the qualification of the work agreed to under the Permanent Vegetation Cover Program within contemplation of the parties; (7) was the qualification of the land under the crossed fencing program within the contemplation of the parties; (8) did appellee fail to complete the work in accordance with the agreement.

can *Pozzolan Corp. v. Desert Trucking Co.,* 450 S.W.2d 433 (Tex.Civ.App.—San Antonio 1970, writ ref'd n.r.e.); *Owen v. Owens Country Sausage, Incorporated,* 493 S.W.2d 653 (Tex.Civ.App.—Amarillo 1973, no writ). This point is overruled.

Appellant Ortiz, in his third point of error, complains of the excessiveness of the award of $3,840.00 as attorney's fees. The record discloses that Appellee Beck's attorney testified that he spent 64 hours on the case. Five days, or 40 hours, of this time was spent in the actual trial of the case in chief. An expert witness testified, among other things, that, in his opinion as an attorney, an hourly charge of $60.00 was reasonable. He testified further that the average fee being charged by attorneys in Nueces County was $60.00 per hour. The jury determined that a reasonable charge for attorney fees was $3,840.00. The general rule is that it is the province of the jury to determine what is the reasonable value of an attorney's services. It is within the jury's province to weigh the testimony of the attorneys as to the value of their services by reference to the nature of the services rendered, the time occupied in their performance, and the amount charged by other attorneys in the locality doing similar work. *Gulf Paving Co. v. Lofstedt,* 144 Tex. 17, 188 S.W.2d 155 (1945). We hold that the evidence supports the jury's finding and as such, the same is not excessive or against the great weight and preponderance of all of the evidence.

Appellant Ortiz also complains that the trial court did not apportion the award of attorney's fees between the prosecution of Beck's claim and the defense of Ortiz' claim, citing *Hemphill v. S. & Q. Clothiers,* 579 S.W.2d 564 (Tex.Civ.App.—Fort Worth 1979, no writ), and *Bray v. Curtis,* 544 S.W.2d 816 (Tex.Civ.App.—Corpus Christi 1976, writ ref'd n.r.e.). These cases are not in point. Here, Ortiz brought suit for breach of an oral contract and Beck counterclaimed for the payment of services rendered under the oral agreement. Beck's counterclaim was so interrelated to Ortiz' cause of action that no distinction in the prosecution and defense of the suit was necessary.

Appellant Ortiz further contends that awarding Beck attorney's fees in the event of an appeal was improper, citing *King Optical v. Auto. Data Processing, Etc.,* 542 S.W.2d 213 (Tex.Civ.App.—Waco 1976, writ ref'd n.r.e.). It is true that a trial court may not penalize a party for taking a successful appeal by taxing him with attorney's fees if he takes such action. The jury found and the trial court's judgment awarded additional attorney's fees, the amount of $1,500.00 to Beck for legal services if the case is appealed to the Court of Civil Appeals, and an additional amount of $1,500.00 if the case is appealed to the Supreme Court of Texas and is unsuccessful. See: *Oliveras v. Porter Poultry & Egg Company,* 523 S.W.2d 726 (Tex.Civ.App.—San Antonio 1975, no writ); *Bernard v. Bernard,* 491 S.W.2d 222 (Tex.Civ.App.—Houston [1st Dist.] 1973, no writ). We find no error in the judgment.

Next, Appellant Ortiz contends in point of error four that the trial court erred in allowing recovery on an unpleaded theory of quantum meruit which was not tried by consent. If an issue is submitted in language similar to an issue in quantum meruit, it does not necessarily make it a quantum meruit issue. Appellee Beck was requesting the jury to determine the total hours spent by Beck on the land and the hourly charge for such services. In order to complain at the appellate level of the submission of a special issue, the complaining party must make a proper objection to the trial court. *Texas Employers' Insurance Ass'n v. Neuman,* 379 S.W.2d 295 (Tex. 1964); *Allen v. American National Insurance Company,* 380 S.W.2d 604 (Tex.1964); *Lanphier Const. Co. v. Fowco Const. Co.,* 523 S.W.2d 29 (Tex.Civ.App.—Corpus Christi 1975, writ ref'd n.r.e.). In the instant case, the record reflects that the only issues objected to were numbers 12 and 14. Even if Ortiz had a valid complaint as to the issue being submitted under a theory of quantum meruit, he has waived his right to complain.

Ortiz asserts in his fifth point of error that the jury's finding in special issue no. 11 was against the great weight and preponderance of the evidence. In order for this Court to sustain this point of error, we must find, after a complete review of all of the record, that the jury finding was contrary to the great weight and preponderance of the evidence as to be clearly wrong and unjust. *In Re King's Estate*, 150 Tex. 662, 244 S.W.2d 660 (1951); *Missouri Pac. Ry. Co. v. Somers*, 78 Tex. 439, 14 S.W. 779 (1890); Robert W. Calvert, "No Evidence" and "Insufficient Evidence" Points of Error, Texas Law Review Vol. 38 No. 4, pp. 361–372. Beck testified to the amount of hours he spent clearing the land; the type of equipment used on the land; the number of extra laborers required at certain times during the work; the move-in and move-out charge for the equipment; and all the extra charges incurred upon the request of Ortiz for additional work. An itemized statement was introduced into evidence by Beck giving a breakdown of Beck's hours, the hours the equipment was used; the hours spent by the laborers on the land; and the move-in and move-out charge. A letter to Ortiz from Beck stating Beck's hourly charge of $30.00 was also introduced into evidence. The only evidence to contradict this testimony was Ortiz' testimony that the parties had agreed to perform the entire job at a fixed rate of $2,700.00, and that this price included all the additional work done by Beck. We find that there was conflicting evidence, evidence of probative force tending to prove the existence of a vital fact, and evidence tending to disprove its existence. However, after careful review of the record, we do not find that the jury's finding was so contrary to the great weight and preponderance of the evidence to merit a new trial. Point of error number 5 is overruled.

Appellant Ortiz complains, in his sixth point of error, that the trial court erred in granting Beck's motion for judgment regarding foreclosure of the mechanic's and materialman's lien on Ortiz' property. Ortiz contends that his general denial to Beck's counterclaim put in issue all matters related to the establishment of a lien. Ortiz argues that it was Beck's burden to convince the jury that he had a valid lien. This is not true. The testimony during the trial established that Beck had complied with all the statutory requirements necessary for perfecting a lien and, as a matter of law, had perfected a valid lien on Ortiz' property. Tex.Rev.Civ.Stat.Ann. art. 5453. If Ortiz wished to complain on appeal about Beck's failure to submit an issue essential to his ground of recovery, it was his responsibility to have objected at the trial court level. This he did not do. *Lyles v. Texas Employers' Insurance Association*, 405 S.W.2d 725 (Tex.Civ.App.—Waco 1966, writ ref'd n.r.e.); *Jon-T Farms, Inc. v. Goodpasture, Inc.*, 554 S.W.2d 743 (Tex.Civ.App.—Amarillo 1977, writ ref'd n.r.e.). Appellant's sixth point of error is overruled.

Ortiz' last point of error asserts that the trial court erred in denying his requested definitions of the terms "contract" and "breach of contract." Rule 277, T.R.C.P., requires a trial court to submit such explanatory instructions and definitions as shall be proper to enable the jury to render a proper verdict. This rule gives the trial court considerable discretion in deciding what definitions are necessary and proper. A trial court is only required to submit definitions of legal and other technical terms. Any other definitions which do not aid the jury are not required. Rule 277, T.R.C.P.; *First State Bank & Trust Co. of Edinburg v. George*, 519 S.W.2d 198 (Tex. Civ.App.—Corpus Christi 1974, writ ref'd n.r.e.). Since the terms "contract" and "breach of contract" were not used in any of the special issues, we find no error in the trial court's refusal to submit these definitions.

Appellee Beck, through his cross-point number 1, contends that this Court has no jurisdiction of this case because the appeal was not timely perfected. We have reviewed the arguments of both parties concerning jurisdiction and conclude that we were correct in our per curiam opinion of February 7, 1980. This opinion is adopted and incorporated herein as a supplement.

■ Appellee Beck's second cross-point on prejudgment interest is not properly before this Court. Appellee Beck made no complaint as to the court's judgment, and there is nothing in the record that indicates appellee Beck's dissatisfaction with the trial court's judgment. Where an appellee does not except to the judgment, the appellee is not entitled to appellate review of his claimed error. *West Texas Utilities Company v. Irvin*, 161 Tex. 5, 336 S.W.2d 609 (1960); *National Farmers Organization v. Smith*, 526 S.W.2d 759 (Tex.Civ.App.—Corpus Christi 1975, no writ); *Texas Oil & Gas Corporation v. Vela*, 429 S.W.2d 866 (Tex. Sup.1968) (on motion for rehearing); *Liberty Mutual Ins. Co. v. General Insurance Corp.*, 517 S.W.2d 791 (Tex.Civ.App.—Tyler 1974, writ ref'd n.r.e.); *Dorbandt v. Bailey*, 453 S.W.2d 205 (Tex.Civ.App.—Tyler 1970, writ ref'd n.r.e.); *Maloney v. Strain*, 410 S.W.2d 650 (Tex.Civ.App.—Eastland 1966, no writ); *Security Insurance Co. v. Pioneer Casualty Co.*, 449 S.W.2d 158 (Tex.Civ.App. —Houston [1st Dist.] 1969, writ ref'd n.r.e.). Appellee Beck's crosspoints 1 and 2 are overruled.

Judgment of the trial court is affirmed.