

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————

No. 02-20-00075-CV

———————————————

TERRY LEE BIZZLE, Appellant

V.

EVE LYNN BAKER, Appellee

On Appeal from the 367th District Court
Denton County, Texas
Trial Court No. 18-9925-367

Before Bassel and Womack, JJ.; and Lee Gabriel (Senior Justice, Retired,
Sitting by Assignment)
Memorandum Opinion by Justice Gabriel

## MEMORANDUM OPINION

In this appeal, we are asked to decide if the trial court lacked subject matter jurisdiction when it signed a final decree of divorce after the appellee, Eve Lynn Baker, died. In his first issue, the appellant, Terry Lee Bizzle, asserts that the final decree of divorce signed by the trial court after Baker's death is void due to the trial court's lack of subject matter jurisdiction. We will address only Bizzle's first issue because it is dispositive of this appeal. We reverse the decision of the trial court and render judgment dismissing the case.

## I. BACKGROUND[1]

On October 23, 2018, Baker filed a divorce petition to dissolve her twenty-year marriage to Bizzle. *See* Tex. Fam. Code Ann. § 6.402. Baker alleged insupportability, cruel treatment, and abandonment as grounds for divorce in her petition. On May 30, 2019, Bizzle filed an original counterpetition for divorce alleging insupportability, as well as cruel treatment, and adultery by Baker.[2]

On September 17, 2019, during a bench trial, there was a great deal of back and forth between the court and attorneys dealing with property valuation and division.

---

[1]Because our opinion concerns only subject matter jurisdiction, we will confine our discussion of the facts accordingly.

[2]At trial, Baker's counsel acknowledged she was not pursuing abandonment as a ground for divorce. As a result, Bizzle's counsel withdrew his cruel treatment claim. Baker did not withdraw her cruel treatment ground and Bizzle did not withdraw his adultery ground. Neither party introduced evidence to support these claims.

2

More colloquy with the court, attorneys, and the court reporter followed closing arguments. The court then advised counsel that it would need time to make rulings.

> THE COURT: Okay. I'll say, I cannot do this in 40 minutes. I have to do a spreadsheet here, look at the two spreadsheets, see what the differences are.

> MR. NELSON: Do you want to e-mail it to us?

> THE COURT: Yes.

> . . . .

> THE COURT: All right. And so I'm trying to get some idea of how long this is going to take. I have one case right now that is going to take a little while. This is – this is definitely not going to happen by the end of the week. This is – your best hope is a week from Friday.

> I will, though, certainly e-mail the parties with the decision on it.

The parties were then poised to leave without any ruling in the case.

> THE COURT: Thank you all very much. I appreciate all the work that y'all have done for me.

> MR. NELSON: Are we excused?

> THE COURT: Yes.

After a break on the record, the proceedings resumed.

> THE COURT: That's what the parties want?

> MS. ROSE: Please.

> THE COURT: (Overlapping) Right? All right. The parties are divorced. I pronounce and render all of that as of today and that entry of the final decree of divorce will be ministerial in nature.

> On October 4, 2019, the court sent the following email to the attorneys:

Baker/Bizzle divorce ruling
Granted on the ground of insupportability.

1) Neither party proved by clear and convincing evidence their claims for reimbursement.
2) H cashed out and used his two retirements without proving how much, if any, was separate.
3) W awarded the CD in the amount of $7,745
4) Using wife's Exhibit 1, I believe the only items on the list that are not agreed to were those highlighted on a copy for the court. Those disputed items are awarded to W.
5) Each party keeps the motor vehicles in their possession and any debt thereon.
6) The TN house and its contents with any debts or liens thereon to H. House valued at $98,000
7) The TX house with all contents except those specifically awarded to H. House valued at $217,000. Second mortgage of approximately $35,000 debt to wife.
8) The wife's $12,500 school loan is community debt; awarded to W.
9) H awarded all items listed on H Ex. 3 entitled H's "Requested items from Carrollton Residence", except the Maytag washer & dryer.
10) Each party pays their own attorney's fees, and their own credit card debt, and any lien or other debt encumbering any item they were awarded.

Mr. Nelson to prepare the Decree. If I have missed something, please visit between yourselves and designate one of you to send an email to me. Please do not send separate emails.

Thank you for your courtesy,
Judge Barnes

The court never filed this email with the clerk.[3]

The court sent the parties an email on November 8, 2019, expressing an intent to set the case for a dismissal-for-want-of-prosecution (DWOP) hearing in December because a decree had not been submitted. The hearing was set for December 13, 2019. On December 3, 2019—prior to Baker's death—the court sent another email in response to the parties' canceling the December dismissal setting. The court addressed the delay and its expectation:

> This case was set nearly a month ago for a DWOP. Now, it is reset for a DWOP for another six weeks. Please use this six weeks to work out

---

[3]Although the trial court never filed the email with the clerk, we have access to it because Bizzle attached it as an exhibit to his motion to reconsider and vacate entry and, alternatively to reopen evidence and/or reconsider and modify the property division.

whatever is holding up entry of the Order. If there is no Order for me to sign on Jan. 24, you should presume a high probability that the case will be dismissed on that date. Feel free to efile a Final Decree that has at least the signatures of the lawyers before that date.

On or about December 19, 2019, Baker passed away, and on December 27, 2019, Baker's counsel filed a motion to sign. On December 30, 2019, Bizzle filed his first notice of death, motion to abate, and motion to dismiss, and he amended that pleading on January 3, 2020. The court held its dismissal hearing on January 24, 2020.

At the dismissal hearing, the court recognized that there were multiple motions pending before the court but suggested that "the first question [would] simply be whether or not this Court has jurisdiction anymore?" The parties agreed. The entire hearing focused on this issue and it was argued at length. A decree was furnished to the court. Baker's counsel represented that "[he] prepared the decree pursuant to your instructions. [Counsel for Bizzle] inter--- redlined it, and I was scheduled to meet with my client and she died." The court then stated that "nobody signed on the . . . final document because of, again, horrific circumstances." The court took the issue under advisement. On January 31, 2020, the trial court impliedly granted Baker's motion to enter a final decree of divorce when it modified the decree submitted, added exhibits, and signed the modified final decree of divorce.[4] By signing the decree, the trial court denied Bizzle's pending motions. On February 28, 2020, Bizzle

_____

[4]At the dismissal hearing, Baker's counsel was allowed to redact the decree presented to the court by marking out the section entitled "Testamentary Provisions" on page 12.

5

filed a motion to reconsider and vacate entry and alternatively to reopen evidence and/or reconsider and modify the property division, which was never ruled on by the court. Bizzle brought this appeal.

## II. DISCUSSION

In his first issue, Bizzle argues that the final decree of divorce is void for lack of subject matter jurisdiction because Baker died before a full and final rendition of judgment on all issues in the case and because the decree was entered over objection after Baker's death. Bizzle contends that the trial court's September 17, 2019 oral rendition of divorce was interlocutory and that the trial court's October 4, 2019 email was not a rendition because it was never filed with the clerk or officially announced on the record and further did not express a present intent to render.

Subject matter jurisdiction concerns the court's power to hear and determine a particular type of case. *CSR Ltd. v. Link*, 925 S.W.2d 591, 594 (Tex. 1996) "Subject-matter jurisdiction cannot be waived, and can be raised at any time." *Alfonso v. Skadden,* 251 S.W.3d 52, 55 (Tex. 2008). "A judgment is void if rendered by a court without subject matter jurisdiction." *In re USAA*, 307 S.W.3d 299, 309 (Tex. 2010) (orig. proceeding). Whether a trial court has subject matter jurisdiction is a question subject to de novo review. *See Mayhew v. Town of Sunnyvale*, 964 S.W.2d 922, 928 (Tex. 1998); *In re G.S.G.*, 145 S.W.3d 351, 353 (Tex. App.—Houston [14th Dist.] 2004, no pet.).

"In Texas, marriage may only be terminated by death or court decree." *In re Wilburn*, 18 S.W.3d 837, 840 (Tex. App.—Tyler 2000, pet denied) (citing *Claveria v. Claveria*, 615 S.W.2d 164, 167 (Tex. 1981)). It is well settled that a cause of action for a divorce is purely personal and abates on either party's death prior to the rendition of judgment on the merits. *Whatley v. Bacon*, 649 S.W.2d 297, 299 (Tex. 1983) (orig. proceeding) ("Death of a party abates a divorce action and its incidental inquiries of property rights and child custody."); *McKenzie v. McKenzie*, 667 S.W.2d 568, 571–72 (Tex. App.—Dallas 1984, no writ). However, when a trial court has properly rendered judgment that is a full and final adjudication of the merits of the issues in a divorce case, including the property rights of the parties, the cause does not abate when a party dies. *Dunn v. Dunn*, 439 S.W.2d 830, 833 (Tex. 1969); *Novotny v. Novotny*, 665 S.W.2d 171, 173–74 (Tex. App.—Houston [1st Dist.] 1983, writ dism'd). "Thus a written judgment signed by the trial judge is not a prerequisite to the finality of a judgment." *Dunn,* 439 S.W.2d at 832–33.

While the issue is whether the trial court lacked subject matter jurisdiction when the final decree was entered, the answer to that question depends on whether the oral rendition on September 17, 2019, or the oral rendition plus the email of October 4, 2019, are legally sufficient to constitute a full and final rendition of judgment in the case.

We will address the oral rendition first. It is undisputed that at the conclusion of the hearing, the trial court took the property valuation and division issues under

7

advisement and advised the parties that a ruling of the court would be delivered at a later date. It appears from the record that, after being excused and off the record, one or both parties requested the judge to pronounce that the parties were divorced as of that date. When returning to the record, the trial judge stated: "The parties are divorced. I pronounce and render all of that as of today and that entry of the final decree of divorce will be ministerial in nature." It is unclear what might have been meant by "all of that." Yet it is clear that the oral rendition was merely an interlocutory order because the court, during the same hearing, orally reserved ruling on all property issues until a later date.[5]

Rendition of judgment is "the judicial act by which the court settles and declares the decision of the law upon the matters at issue." *Genesis Prod. Co. v. Smith Big Oil Corp.*, 454 S.W.3d 655, 659 (Tex. App.—Houston [14th Dist.] 2014, no pet.) (citing *Comet Aluminum Co. v. Dibrell*, 450 S.W.2d 56, 58 (Tex. 1970) (orig. proceeding)). "In order to be an official judgment, the trial court's oral pronouncement must indicate an intent to render a full, final and complete judgment at that point in time." *Gamboa v. Gamboa*, 383 S.W.3d 263, 270 (Tex. App.—San Antonio 2012, no pet.); *In re Marriage of Joyner*, 196 S.W.3d 883, 887 (Tex. App.—

---

[5]The issue of divorce and the issue of property division are not severable. Because Section 7.001 of the Texas Family Code makes the division of property in a divorce action mandatory, it is error for the trial court to sever the issue of divorce from the issue of property division. *See Vautrain v. Vautrain*, 646 S.W.2d 309, 316 (Tex. App.—Fort Worth 1983, writ dism'd) ("The divorce was interlocutory until the disposition of all issues. . . .").

Texarkana 2006, pet. denied) (stating that the trial court's words, whether spoken or written, must evince a present, as opposed to future, act that effectively decides the issues before the court). The record shows that many issues essential to the divorce judgment were unresolved on September 17, 2019. Accordingly, the record shows the trial court did not render a full and complete judgment at that time. *See Gamboa*, 383 S.W.3d at 270*; MacGillivray v. MacGillivray*, No. 04-10-00109-CV, 2011 WL 2150352, at *4 (Tex. App.—San Antonio June 1, 2011, pet. denied) (mem. op.) (holding trial court did not render judgment when it stated the parties were divorced before the jury had rendered its decision and before the trial court had decided the remaining issues). Thus, the trial court's oral pronouncement on September 17, 2019, was not a full, final, and complete judgment.[6]

Next we will consider whether the October 4, 2019 email transformed the interlocutory oral pronouncement into a final judgment. "Judgment is rendered when the trial court officially announces its decision in open court or by written memorandum filed with the clerk." *S&A Rest. Corp. v. Leal*, 892 S.W.2d 855, 857 (Tex. 1995); *Wittau v. Storie*, 145 S.W.3d 732, 735 (Tex. App.—Fort Worth 2004, no pet.) (per curiam). It is undisputed that the trial court's ruling on which ground (alleged, but not withdrawn) it was granting the divorce and its property issues rulings

---

[6]The trial court stated that the entry of the decree would be ministerial in nature, and Baker relies on that characterization. But the trial court's oral pronouncement was not a full, final, and complete judgment, and just because the court said the entry of the decree would be a ministerial act does not make it so.

were not delivered orally in open court. It is also undisputed that the October 4, 2019 email was never filed by the court with the clerk.

At the January 24, 2020 dismissal hearing, where this issue was thoroughly argued, Baker relied heavily on *Dunn*. *See* 439 S.W.2d at 831–34. While *Dunn's* facts concerning a divorce filing, a trial, and the death of one party before a decree was signed resemble the facts of this case, that is where the similarities end. At the conclusion of the trial in *Dunn*, the trial judge stated, "May I say as a preliminary remark, and I am going to decide the case right now, not going to take it under advisement. I am going to grant the divorce to Mrs. Dunn . . . ." *Id.* at 831. The trial court went on to orally pronounce a decision on property division, payment of certain taxes, and attorney's fees. *Id.* at 831–32. Two days later, Mr. Dunn passed away. *Id.* at 832. Mrs. Dunn filed a motion to dismiss, which was denied by the court, and a final decree of divorce, reflecting the orally pronounced rulings of the court, was signed. *Id.* The supreme court found the trial court's oral judgment to be a final judgment that was dispositive of all the issues. *Id.* at 833. On the record, the trial judge in *Dunn* made it perfectly clear that it was his intent to pronounce, and that he was pronouncing, a final ruling in the case. *Id.* at 831. *Dunn* is factually distinguishable from this case.

On appeal, Baker took a largely different approach to this issue. Baker relies on cases that state that "a decision announced by letter from the court to the parties when no announcement is made in open court or any memorandum filed with the

10

clerk, would constitute rendition." *Ortiz v. O.J. Beck & Sons, Inc.* 611 S.W.2d 860, 865 (Tex. App.—Corpus Christi 1980, no writ.) (per curiam); *see Rhima v. White*, 829 S.W.2d 909, 913 (Tex. App.—Fort Worth 1992, writ denied); *Estes v. Carlton*, 708 S.W.2d 594, 596 (Tex. App.—Fort Worth 1986, writ ref'd n.r.e.); *Atlantic Richfield Co. v. Exxon Corp.*, 663 S.W.2d 858, 863 (Tex. App.—Houston [14th Dist.] 1983), *rev'd on other grounds*, 678 S.W.2d 944 (Tex. 1984).

In *Ortiz*, the jurisdiction of the appellate court was challenged because the appeal bond was filed 31 days after a judgment was signed and filed on September 24, 1979. *Ortiz*, 611 S.W.2d at 863. A letter dated the following day from the trial court to the attorneys created the issue of the actual date of rendition. *Id.* In that case, the court noted that "the record does contain a letter dated September 25, 1979, and signed by the trial judge which informed the attorneys of his decision in the case on the merits and stated that the judgment would be '. . . entered as of this date.'" *Id.* at 864. On October 25, 1979, the trial judge signed an order amending the judgment to reflect a date of September 25, 1979, instead of September 24, 1979. *Id.* The court found that the trial judge's letter to counsel was the public announcement and rendition of the court's final decision and that appellate timelines began on September 25, 1979; thus, the appeal bond was timely filed. *Id.*

The issue in *Ortiz* differs from the issue in this case. The sole issue in *Ortiz* was whether an appeal was timely perfected. No one challenged the sufficiency of the letter as expressing a full and final ruling on all issues or asserted that it did not

11

express a present intent to render judgment. The letter in *Ortiz*, which was filed of record, is substantially different from the email in this case. The trial judge in *Ortiz* included in the letter his decision on the merits and expressed in clear terms a present intention that the letter be considered the judgment rendered as of that date. *Id.* The unfiled email in the present case, on the other hand, expressed the court's uncertainty as to whether the rulings contained in the email answered all the outstanding questions and expressed a willingness to entertain any issues that had been missed. *Ortiz* decides a different issue on very different facts and is not persuasive in this analysis.

*Atlantic Richfield Co.* also dealt with a timing-of-rendition question that would determine whether a party could pursue discovery. 663 S.W.2d at 864. Although the trial judge signed an order granting partial summary judgment on May 10, 1982, the court found April 2, 1982 to be the date of rendition of the partial summary judgment in the case because "that is the date when the trial court's decision was publicly announced both through a memorandum *filed with the clerk*, i.e., the initialed docket entry, and letter to counsel for one of the parties." *Id.* at 863 (emphasis added). The memorandum filed with the clerk by the trial judge stated "Apr 2 1982 M/Partial S.J. granted. W.E.J." *Id.* at 862. The April 2, 1982 ruling filed with the clerk was a clear and final ruling granting a partial summary judgment, and the court's present intent to finally rule on April 2, 1982 was not the issue in that case. As with *Ortiz, Atlantic Richfield's* facts and issues are distinguishable from the case at hand.

12

*Estes* is another case that deals with whether an appeal was perfected by the timely filing of a cost bond. 708 S.W.2d at 595–96. The facts showed that there were two judgments signed in the case—one on November 14, 1984, and one on February 11, 1985—leaving the question of which judgment was the final judgment that started the timeline for appeal. *Id.* The court held "that there [were] two judgments 'shown of record' in this cause." *Id.* at 595. The court reasoned that because the February judgment was signed over 30 days after the November judgment was signed, the February judgment was signed when the trial court no longer had plenary power over the November judgment. The court found the February judgment had no effect. *Id.* The issue resolved was not whether either judgment was final based on the contents of the document but simply which judgment started the timeline for filing an appeal bond. The case is not controlling of our issue because the facts and issues are dissimilar.

*Rhima* involves a ruling on a motion for summary judgment that was heard by the trial court on June 28, 1990. 829 S.W.2d at 913. The court sent an August 7, 1990 letter containing its decision to grant the defendant's motion for summary judgment. *Id.* It appears that "neither a docket entry nor memorandum of judgment was made at the time." *Id.* On August 13, 1990, the plaintiff attempted to amend his petition without leave of court. *Id.* The trial court struck the amended petition, and that ruling was appealed. *Id.* The court found that the trial court did not abuse its discretion by striking the pleading because leave was not obtained to amend it

13

pursuant to Texas Rule of Civil Procedure Rule 63. *Id.*; *see* Tex. R. Civ. P. 63.[7] The court in *Rhima* determined that Rule 63 applied and that the plaintiff could not amend his petition after the summary judgment hearing. 829 S.W.2d at 913. In dicta, the court further reasoned that because there had been no announcement in open court of a ruling and because a letter from the court to the parties can, in certain circumstances, amount to a rendition, the plaintiff could not amend after the date of the letter. *Id.* The letter itself was not the issue in *Rhima.* There was no challenge that the letter was not a full and final resolution of all issues or that it was not a rendition. The issue in *Rhima* is not the issue in the present case.

Bizzle relies on cases that apply a filing requirement for a written rendition of judgment. "A trial court's letter to the parties setting out its findings and requesting counsel to prepare a judgment has been held to be a memorandum that can serve as the rendition of judgment if it is filed with the clerk." *Robert v. Wells Fargo Bank, N.A.*, 406 S.W.3d 702, 705 (Tex. App.—El Paso 2013, no pet.); *see Abarca v. Roadstar Corp. of Am.*, 647 S.W.2d 327, 327–28 (Tex. App.—Corpus Christi 1982, no writ).[8] It is

---

[7]Rule 63 governs the timing of amendments and requires that a party amend its pleadings more than seven days before trial unless leave of court is granted for a later filing. *Id.* "A summary judgment proceeding is a trial within the meaning of Rule 63." *Love v. Sneed*, 802 S.W.2d 422, 423 (Tex. App.—Austin 1991, no writ) (per curiam).

[8]Baker argues that the October 4, 2019 email was filed with the clerk when Bizzle attached it as an exhibit to his motion to reconsider and vacate entry and that it "related back to the original date the rendition letter was sent." Baker cites *Roberts* for this argument. *Roberts* does not support this argument but instead states explicitly that the letter in that case was filed with the clerk the day after it was sent. *Roberts,*

14

undisputed that the email in question was not filed with the clerk, but our analysis will not stop here because "[t]he question of whether judgment has been rendered is distinct from the issue of whether the form of the judgment is final." *Roberts*, 406 S.W.3d at 705.

Bizzle also argues that the October 4, 2019 email is not a full and complete judgment that reflects a present intent to render judgment. We agree. The facts and the issues in the present case are analogous to *Ex Parte Gnesoulis*. 525 S.W.2d 205, 207–08 (Tex. App.—Houston [14th Dist.] 1975, orig. proceeding). In this family law case, the court found that an unfiled letter containing rulings and signed by the court did not, as a matter of law, constitute a rendition of judgment in the case. *Id.* The court first found that the letter was not a rendition because although it was signed by the judge, it was not "delivered to the clerk for filing, signifying to the clerk in his official capacity and for his official guidance the sentence of law pronounced by the judge." *Id.* at 209; *see Dibrell*, 450 S.W.2d at 56. The court's letter in *Ex parte Gnesoulis* stated, "I have concluded that Judgment should be entered in the above cause as follows . . . ." 525 S.W.2d at 207. Thereafter, the court set forth twelve specific paragraphs containing rulings on custody, property issues, and costs. *Id.* at 207–08. The court then went further than the court in the present case to say that if the parties

---

406 S.W.3d at 706. Nowhere in that case does the court find that a copy of a letter attached as an exhibit to a motion satisfies the requirement of filing with the clerk or that if such a filing occurred it would relate back to the date of the letter.

15

could not agree on the substance of the judgment, argument would not be allowed "until after a formal Judgment is entered." *Id.* at 208. The court stated,

> [I]t is obvious from the very general terms of the provisions . . . that the trial judge intended this letter to be no more than a guideline upon which the attorneys for both parties were to draw up and submit their proposed judgments. In spite of the fact that the trial judge indicated that he would not hear arguments about the substance of the judgment until the entrance of a final judgment and motions for new trial filed subsequent thereto, the judge left a great deal of room for refinement and definition of terms of the judgment as proposed in the letter. It is the useful prerogative of the trial judge to communicate, both orally and in writing, with the attorneys of the parties in crystallizing the provisions of a judgment prior to rendition.

*Id.* at 209.

In the present case, the email sent by the trial judge contained ten brief rulings that did not encompass a single page. Further, the court explicitly left open the issue of whether "I have missed something . . . ." and invited the attorneys to send an email to express what remained unaddressed. The court's email allowed for the possibility of further rulings and clarifications. It did not express a present intent to render a full, final, and complete judgment at that point in time. *See Gamboa,* 383 S.W.3d at 270; *Joyner,* 196 S.W.3d at 886.

A final decree was not presented to the court until after Baker died. The decree presented was fourteen pages long. One must only look at the decree to determine that it contains numerous provisions not addressed in the email. One such example is the section dealing with the treatment and allocation of community income

16

for years 2018 and 2019. Indeed, this was a property issue completely unaddressed in the court's email.

The decree itself also raises concerns. Throughout the decree there are provisions that state "the parties agree." There is nothing in the record to support the proposition that the parties ever agreed to any provision in this decree and certainly none that there was an agreement at the time the decree was signed, when one of the parties had been deceased for several weeks. At the hearing on the motion to enter filed by Baker, her counsel imparted the only information about the efforts to obtain an agreement on the decree when he stated that once a draft of the decree was prepared "[counsel for Bizzle] inter --- redlined it, and I was scheduled to meet with my client and she died." It seems clear from these facts that there was never an agreement, yet the decree repeatedly recites that "the parties agree," "the parties understand," and "the parties acknowledge." Finally, the decree the trial court signed contains the following:

> Petitioner and Respondent each acknowledge that before signing this Final Decree of Divorce they have read this Final Decree of Divorce fully and completely, have had the opportunity to ask any question regarding the same, and fully understand that the contents of this Final Decree of Divorce constitute a full and complete resolution of this case. Petitioner and Respondent acknowledge that they have voluntarily affixed their signatures to this Final Decree of Divorce, believing this agreement to be a just and right division of the marital debt and assets. . . .

The decree did not bear the signature of either party or their attorneys.

"As a general rule, a party may effectively withdraw consent to an agreement prior to a rendition of a judgment." *Skidmore v. Glenn*, 781 S.W.2d 672, 673 (Tex. App.—Dallas 1989, no writ); *see Samples Exterminators v. Samples*, 640 S.W.2d 873, 874 (Tex. 1982). Although there is no evidence, by a signature or otherwise, that Bizzle ever agreed to the decree's provisions, the motions filed by his counsel after Baker's death made it clear he did not agree to the rendition of judgment and the signing of the decree.

Having found that the September 17, 2019 oral pronouncement was not a rendition of judgment of all issues in the case, we further find that the October 4, 2019 email was not a full, complete, and final rendition of judgment either standing alone or in combination with the prior oral pronouncement. The parties' marriage was therefore terminated by Baker's death. The final decree in the case is void for lack of subject matter jurisdiction, and we sustain Bizzle's first issue. We need not address Bizzle's remaining issues. *See* Tex. R. App. P. 47.1.

### III. CONCLUSION

Having sustained Bizzle's first issue, we reverse the judgment of the trial court and render judgment dismissing the case as moot. *See* Tex. R. App. P. 42.3(c); *City of Garland v. Louton*, 691 S.W.2d 603, 605 (Tex. 1985).

/s/ Lee Gabriel

Lee Gabriel
Justice

Delivered:  January 13, 2022