TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-99-00364-CV






Reliable Consultants, Inc. d/b/a Dreamers, Appellant



v.



Delia Jaquez, Appellee







FROM THE DISTRICT COURT OF TRAVIS COUNTY, 261ST JUDICIAL DISTRICT


NO. 98-03542, HONORABLE LORA J. LIVINGSTON, JUDGE PRESIDING







 Appellee Delia Jaquez sued appellant, Reliable Consultants, Inc. d/b/a Dreamers
("Dreamers"), for the injuries she sustained in a fall at appellant's store. The jury apportioned
responsibility between the parties, finding Jaquez forty percent negligent and Dreamers sixty
percent negligent in causing the accident. The trial court rendered judgment on the verdict against
Dreamers, awarding Jaquez $123,576.41 in damages. Dreamers appeals in seven points of error. 
We will affirm.


BACKGROUND

 The material facts of this case are not in dispute. Dreamers is a Texas corporation 
that sells adult videos and other sexually oriented products at two locations in Austin. In April
of 1996, Jaquez visited one of the locations with her husband. The couple entered the store and
walked directly to a wall featuring many popular video rentals. After selecting a video, Jaquez
and her husband proceeded to walk to a merchandise display in another part of the store. The
area of the store where the display was located was approximately five inches higher in elevation
than the rest of the store. At the point where the two sections of the store connected stood a
support column. To the right of the column was a six-foot wide ramp that connected the lower
level of the store to the upper level. To the left of the support column was a five-inch high step,
the perimeter of which was outlined with red tape. Jaquez walked to the right of the column and
proceeded up the ramp. She then turned to examine the merchandise on the display to her left. 
The display, which stood to the left of the ramp, had been placed only one or two feet away from
the step. Jaquez and her husband browsed for a short while and then decided to return to the front
of the store to rent the video they had chosen. Upon turning to leave, Jaquez failed to notice the
step and fell to the floor, twisting and fracturing her ankle in the process.

 Jaquez filed suit against Dreamers in April 1998 on a premises liability theory,
alleging that the store was negligent in failing to protect Jaquez, a business invitee, from the
unreasonable risk of harm presented by the step and display. Jaquez requested actual and
consequential damages, including medical expenses, lost wages and earning capacity, and physical
and mental pain and anguish. Dreamers responded with a general denial and pleaded an
affirmative defense of contributory negligence. At trial, Dreamers argued that there was no
unreasonable risk of harm associated with the step because it was in plain view, well lit, and 
marked with red tape. Dreamers maintained that Jaquez's own negligence was the sole proximate
cause of the fall.

 After both sides rested, the trial court submitted the case to a jury. The jury was
asked to determine (1) whether the negligence, if any, of Jaquez and Dreamers caused the fall,
(2) the percentage of negligence attributable to each party, and (3) the amount of damages that
would reasonably compensate Jaquez for her injuries. After deliberating, the jury returned with
its verdict, finding Jaquez forty percent negligent and Dreamers sixty percent negligent for the
fall. The jury found $168,958.74 to be a reasonable amount of compensation for Jaquez's
injuries. The trial court rendered judgment on the verdict and, after taking into account the
percentage of responsibility that the jury attributed to Jaquez's own negligence, ordered Dreamers
to pay Jaquez damages in the amount of $123,576.41. Dreamers filed a motion for judgment
notwithstanding the verdict and a motion for new trial. The trial court denied both motions. 
Dreamers now brings this appeal, raising seven points of error.


DISCUSSION


Legal and Factual Sufficiency of the Evidence

 The appellant's burden in this appeal is a heavy one. By its first three points of
error, Dreamers seeks a reversal of the trial court's judgment on grounds that the evidence is
legally and factually insufficient to support the jury's findings that (1) the condition presented an
unreasonable risk of harm, (2) Dreamers knew or should have known of that unreasonable risk
of harm, and (3) Dreamers' failure to exercise reasonable care by failing to adequately warn
Jaquez of the condition or make it safe was a proximate cause of Jaquez's injuries. (1)

 When reviewing a no-evidence point, we consider only the evidence and inferences
tending to support the jury's fact finding. We disregard all evidence and inferences to the
contrary. See Burroughs Wellcome Co. v. Crye, 907 S.W.2d 497, 499 (Tex. 1995); Simons v.
City of Austin, 921 S.W.2d 524, 527 (Tex. App.--Austin 1996, writ denied). We will uphold the
finding if more than a scintilla of evidence supports it. See Crye, 907 S.W.2d at 499; Simons,
921 S.W.2d at 527. Evidence amounts to more than a scintilla if reasonable minds could arrive
at the finding given the facts proved in the particular case. See Crye, 907 S.W.2d at 499; Simons,
921 S.W.2d at 527.

 When reviewing a jury verdict to determine the factual sufficiency of the evidence,
we consider and weigh all of the evidence. See Plas-Tex, Inc. v. U.S. Steel Corp., 772 S.W.2d
442, 445 (Tex. 1989); Cain v. Bain, 709 S.W.2d 175, 176 (Tex. 1986). When the challenge is
to a finding on which the prevailing party had the burden of proof, we may reverse the judgment
only if the challenged finding shocks the conscience, clearly shows bias, or if the evidence
supporting the finding is so weak as to make the judgment clearly wrong and manifestly unjust. 
See Pool v. Ford Motor Co., 715 S.W.2d 629, 635 (Tex. 1986); Cain, 709 S.W.2d at 176. We
may not substitute our judgment for that of the jury merely because we reach a different
conclusion. See Peco Constr. Co. v. Guajardo, 919 S.W.2d 736, 739 (Tex. App.--San Antonio
1996, writ denied); Westech Eng'g, Inc. v. Clearwater Constr., Inc., 835 S.W.2d 190, 196 (Tex.
App.--Austin 1992, no writ).

 By its first point of error, appellant complains that the evidence is legally and
factually insufficient to support the jury's finding that the step and adjacent display presented an
unreasonable risk of harm. We disagree. "A condition presenting an unreasonable risk of harm
is one in which there is such a probability of a harmful event occurring that a reasonably prudent
person would have foreseen it or some similar event as likely to happen." Seideneck v. Cal
Bayreuther & Assoc., 451 S.W.2d 752, 754 (Tex. 1970). According to the testimony of Justin
Bertelson, one of Dreamers' former store managers, the sales counter at one time stood flush with
the step. At some point, Dreamers rearranged the store and moved the sales counter to the front,
exposing the step in the process. It then placed a display in close proximity to the step and
stocked the shelves with merchandise, thereby creating a visual distraction. Although appellant
sought to eliminate the hazard by constructing a ramp over a portion of the step, it chose not to
extend the ramp over the entire length of the step. Thus, the remaining portion of the step
remained unguarded and unmarked, except for a strip of red tape that was placed around the
perimeter.

 At trial, William Senkowski, the plaintiff's expert witness on loss prevention and
occupational health and safety issues, testified how the step and its surrounding conditions
presented a hazard. Senkowski explained that customers approaching the step from the elevated
level of the store would not see the step unless they were looking directly at the floor. He also
discussed the visual distraction created by the videos and merchandise and pointed out that there
were no visual cues or warnings at eye level to alert customers that a step was imminent. 
Senkowski suggested many reasonable precautions that could have been taken to adequately warn
customers or eliminate the risk, such as (1) placing "lobby ropes" along the step to direct traffic
towards the ramp, (2) posting a sign or other visual warning at eye level, (3) dividing the display
shelf at the step so as to create a visual cue that would attract customers' attention, or (4) blocking
the step with a table or display in a manner similar to the store's previous configuration. 
Considering this testimony alone, the jury may very well have found that Dreamers' failure to take
more precautions was unreasonable.

 Next, Justin Bertelson testified that during his employment as the store's manager,
he had observed between twelve and fifteen people stumble or react with surprise after failing to
see the same step that caused Jaquez to fall. Bertelson also testified that the red tape appellants
had placed around the step's perimeter was often scuffed and worn--sometimes almost
black--suggesting that persons had stumbled across the step on numerous occasions. The testimony
of Sendowsky and Bertelson, coupled with the photographic evidence in the record, constitute
more than a scintilla of evidence from which the jury could reasonably infer that the condition
presented an unreasonable risk of harm. Consequently, we find the evidence legally sufficient to
support the jury's finding. Furthermore, after weighing and considering all of the evidence
equally, we are unable to conclude that the jury's finding is so shocking or biased or that the
evidence is so weak as to make the jury's verdict clearly wrong and manifestly unjust.

 Appellant nevertheless cites a line of cases in which courts of this state have
reversed premises liability judgments rendered in favor of plaintiffs, holding that, as a matter of
law, certain premises conditions present no unreasonable risk of harm. (2) We are not persuaded
by these authorities. Although a few of appellant's cases involve accidents or injuries similar to
those Jaquez sustained in her fall, all either expressly or implicitly underscore the need to
determine each individual case on its own merits. See, e.g., Seideneck, 451 S.W.2d at 755 ("the
evidence as it appears in the record of this case . . . is so weak as to do no more than create a
mere surmise") (emphasis added). It is important to note that reasonableness determinations such
as the one here are fact-intensive inquiries and, as such, are issues well-suited for a jury's
determination. Indeed, as the Texas Supreme Court commented in one of the cases cited by
appellant, there is no definitive, objective test that may be applied to determine whether a specific
condition presents an unreasonable risk of harm. See Seideneck, 451 S.W.2d at 754. While
premises liability cases involving similar facts are sometimes probative of whether a type of
condition in a particular situation may present an unreasonable risk of harm, they are by no means
conclusive on the question. Appellant selects certain discrete facts from the cases it cites; it then
focuses on those isolated facts and argues that the case at bar is analogous. However, the facts
in this case are unique and demand an individualized determination, one that a jury has already
made. Having concluded after reviewing the record that the evidence is legally and factually
sufficient to support the jury's finding that the condition presented an unreasonable risk of harm,
we overrule appellant's first point of error.

 In its second point of error, appellant maintains that even if the condition did
present an unreasonable risk of harm, there is legally and factually insufficient evidence to support
the jury's finding that Dreamers knew or should have known of any such risk. We disagree. 
First, we note that this was not a latent premises defect that appellant could not have reasonably
been expected to discover. Rather, Dreamers was aware of the hazard it created by its own
affirmative actions. In the past, the store's sales counter was flush with the step, negating any risk
of harm. However, at some point Dreamers voluntarily chose to move the counter and place a
display shelf within close proximity of the step, thereby exposing the step and creating an added
visual distraction in the process. Recognizing the resulting hazard, Dreamers attempted to reduce
the risk of injury by constructing a ramp over a portion of the step and outlining with red tape the
perimeter of the step that remained exposed. Furthermore, as stated previously, Dreamers was
charged with notice of the hazard after Bertelson witnessed between twelve and fifteen customers
stumble or react with surprise after failing to see the step. (3) From the precautionary measures
appellant affirmatively undertook, coupled with the numerous previous instances where people
had stumbled, the jury could reasonably infer that appellant had actual knowledge of the risk
presented. Even if it could be considered that appellant had no actual knowledge of the risk, there
is more than sufficient evidence in the record to support a jury finding that appellant, at the very
least, should have known of the risk. We therefore overrule appellant's second point of error.

 Appellant argues in its third point of error that the evidence is legally and factually
insufficient to support the jury's finding that appellant's failure to exercise reasonable care was
a proximate cause of Jaquez's injuries. To prevail under a theory of premises liability, a plaintiff
must prove that the defendant's negligence was a proximate cause of his injuries. See CMH
Homes, Inc., 15 S.W.3d at 99; Corbin, 648 S.W.2d at 296. Proximate cause consists of cause
in fact and foreseeability. See Leitch v. Hornsby, 935 S.W.2d 114, 118-19 (Tex. 1996). A
defendant's negligence is a cause in fact of the plaintiff's injuries if the negligent act or omission
was a substantial factor in bringing about the injury, without which the harm would not have
occurred. See Doe v. Boys Clubs of Greater Dallas, 907 S.W.2d 472, 477 (Tex. 1995). 
Foreseeability, the second element of proximate cause, requires that a person of ordinary
intelligence should have anticipated the danger created by the negligent act or omission. See Doe,
907 S.W.2d at 478; Travis v. City of Mesquite, 830 S.W.2d 94, 98 (Tex. 1992). A danger is
foreseeable if the injury is of the type that "might reasonably have been anticipated." Nixon v.
Mr. Property Mgmt. Co., 690 S.W.2d 546, 551 (Tex. 1985).

 The evidence firmly establishes that Dreamers' failure to exercise reasonable care
to reduce or eliminate the risk was a cause in fact of Jaquez's injuries. The very nature of the
accident and common sense suggest that a sufficient causal nexus exists between Dreamers'
decision to expose the step without taking additional safety precautions and Jaquez's injuries. 
Both Jaquez and Senkowsky testified that if there had been a warning at eye level or some sort
of physical barrier, in all probability Jaquez would have noticed the step or avoided it altogether.
Indeed, many of the precautions Senkowsky recommended (precautions that the jury may have
found to be reasonable courses of action) would have eliminated the hazard entirely and prevented
the accident. Because Jaquez's injuries were a natural and probable result of Dreamers' failure
to use reasonable care, we conclude that there was cause in fact. See Doe, 907 S.W.2d at 477.

 Likewise, Jaquez's injuries were a foreseeable result of Dreamers' breach of its
duty of care. Certainly, it is foreseeable that an inadequately marked or guarded step could cause
someone to fall and sustain bodily injuries. As Bertelson testified, at least twelve to fifteen other
customers had failed to see the step and stumbled. On this basis alone, the jury could have found
that a reasonable person would have anticipated that a customer might trip and fall on the step. 
We are reminded that our determination of whether an injury is foreseeable is "a practical inquiry
'based on common experience applied to human conduct.'" Doe, 907 S.W.2d at 478 (quoting
City of Gladewater v. Pike, 727 S.W.2d 514, 518 (Tex. 1987)). Common experience suggests
that steps, although undoubtedly commonly encountered structures, may present unreasonable
risks of harm in certain circumstances. Where, as here, a step is unguarded, insufficiently
marked, and obscured by nearby distractions, it is entirely foreseeable that a customer who is
unacquainted with the premises might trip and fall as a result. The jury found that Jaquez's
injuries were foreseeable, and having reviewed the record we are unable to conclude that the
evidence supporting this finding is legally or factually insufficient. We overrule appellant's third
point of error.


Jury Charge

 Next, Dreamers complains by its fourth point of error that the trial court erred in
refusing to include in the jury charge a definition of "unreasonable risk of harm." At trial,
appellant requested submission of "unreasonable risk of harm" as the term was defined by the
Texas Supreme Court in Seideneck v. Cal Bayreuther & Assoc., 451 S.W.2d at 754. "A condition
presenting an unreasonable risk of harm is one in which there is such a probability of a harmful
event occurring that a reasonably prudent person would have foreseen it or some similar event as
likely to happen." Id. Dreamers contends that the trial court's refusal to submit this definition
was harmful error and that without it the jury was permitted to make an affirmative finding
without applying the appropriate legal standard. We disagree.

 Rule 277 of the Texas Rules of Civil Procedure requires that a trial court submit
those instructions that are proper in enabling the jury to make a just decision. See Tex. R. Civ.
P. 277. A trial court is only required to submit explanatory instructions and definitions for legal
and technical terms. See Green Tree Acceptance, Inc. v. Combs, 745 S.W.2d 87, 90 (Tex.
App.--San Antonio 1988, writ denied); Ortiz v. O. J. Beck & Sons, Inc., 611 S.W.2d 860, 868
(Tex. Civ. App.--Corpus Christi 1980, no writ). A trial court has broad discretion in submitting
the jury charge, see Texas Dep't of Transp. v. Ramming, 861 S.W.2d 460, 463 (Tex.
App.--Houston [14th Dist.] 1993, writ denied), and an error in the jury charge is reversible only
if it probably caused rendition of an improper judgment. See Tex. R. App. P. 44.1(a). In
deciding whether the trial court has abused its discretion, we may not substitute our judgment for
the trial court's. See Multi-Moto Corp. v. ITT Commercial Fin. Corp., 806 S.W.2d 560, 567-68
(Tex. App.--Dallas 1990, writ denied); Commercial Life Ins. Co., 895 S.W.2d at 374. Our
inquiry is limited to determining whether the trial court's action was arbitrary or unreasonable. 
See Multi-Moto Corp., 806 S.W.2d at 567-68.

 The jury charge in this case was in strict accordance with the jury questions,
instructions, and definitions recommended by the Texas Pattern Jury Charge (the "pattern
charge") in premises liability cases. See State Bar of Texas, Texas Pattern Jury
Charges--Malpractice, Premises, & Products PJC 66.4 (1998). Neither the instructions nor the
comments in the pattern charge include a specific definition of "unreasonable risk of harm." See
id. PJC 66.4 cmt. Under our broad-form submission rules, the questions submitted, along with
the accompanying instructions, contained all the necessary elements for premises liability outlined
in CMH Homes, Inc. v. Daener and Corbin v. Safeway Stores, Inc. See supra fn. 1. The jurors
were instructed that in order to hold Dreamers liable, they first had to find that an unreasonable
risk of harm existed. At least two other courts of appeals have been confronted with this same
issue, and both have held that a definition of "unreasonable risk of harm" is not necessarily
required in premises liability cases. See Wal-Mart Stores, Inc. v. Berry, 833 S.W.2d 587, 592
(Tex. App.--Texarkana 1992, writ denied); Physicians & Surgeons Gen. Hosp. v. Koblizek, 752
S.W.2d 657, 660 (Tex. App.--Corpus Christi 1988, writ denied). We concur. We are aware of
no authority requiring the submission of more specific instructions regarding a premises owner's
duty than those provided in the pattern charge. Absent any such authority, we hold that the trial
court's refusal to submit in its charge the requested definition of "unreasonable risk of harm" was
not error. Appellant's fourth point of error is overruled.

Admission of Testimony

 In its fifth point of error, Dreamers maintains that the admission of Senkowsky's
testimony, over Dreamers' objection, that the condition was a "trip-and-fall hazard" was harmful
error because Senkowsky was unqualified to testify about the legal standard of care Dreamers
owed Jaquez. Dreamers contends that Senkowski's testimony was irrelevant, unreliable, and
reasonably calculated to and probably did result in an improper judgment. We disagree and
observe that Dreamers mischaracterizes the nature of Senkowsky's testimony.

 We may reverse a trial court's judgment based on an error in the admission or
exclusion of a witness's testimony only if we conclude that (1) the trial court did in fact commit
error and (2) the error was reasonably calculated to cause and probably did cause rendition of an
improper judgment. See Gee v. Liberty Mut. Fire Ins. Co., 765 S.W.2d 394, 396 (Tex. 1989);
McEwen v. Wal-Mart Stores, Inc., 975 S.W.2d 25, 27 (Tex. App.--San Antonio 1998, pet.
denied). In determining error, we review the trial court's admission of evidence for an abuse of
discretion. See McEwen, 975 S.W.2d at 27; Tracy v. Annie's Attic, Inc., 840 S.W.2d 527, 531
(Tex. App.--Tyler 1992, writ denied). A trial court abuses its discretion only if it acts
unreasonably or without reference to any guiding rules and principles. See Downer v.
Aquamarine Operators, Inc., 701 S.W.2d 238, 241-42 (Tex. 1985).

 For an expert's testimony to be competent, it must first be shown that he is trained
in the science of which he testifies or has knowledge of the subject matter of the fact issue in
question. See Missouri Pac. R.R. Co. v. Buenrostro, 853 S.W.2d 66, 77 (Tex. App.--San Antonio
1993, writ denied). The undisputed evidence in the record shows that Senkowski had at least
twenty years of professional experience working as a property inspector and loss control
consultant, advising businesses about loss control issues and making health and safety
recommendations. He was certified by the Texas Department of Insurance as a qualified Texas
field safety representative and a member of the American Society of Safety Engineers and the
National Safety Council. Senkowsky had successfully passed several examinations necessary for
his certifications, all of which demanded extensive knowledge of safety issues, including state and
federal safety regulations. On the basis of these qualifications and his personal knowledge of the
facts in this case, Senkowsky testified that the step and the adjacent display were hazardous. He
also suggested several safety precautions that could have eliminated or minimized the risk.

 Dreamers complains that there was no showing that Senkowsky had sufficient
knowledge or experience qualifying him to testify regarding the legal standard of care owed by
premises occupiers or what conditions constitute an unreasonable risk of harm. However,
Senkowsky made no legal conclusions. He never testified as to whether the condition presented
an unreasonable risk of harm. Nor did Senkowsky ever comment on the duty of care Dreamers
owed to Jaquez or whether he believed Dreamers had been negligent. Senkowsky merely testified
that in his opinion the step and its surroundings presented a "trip-and-fall hazard." Thereafter,
it was the jury's province to consider that testimony, along with all the other evidence, and to
determine for themselves the ultimate issue of whether the step presented an unreasonable risk of
harm. Senkowsky's testimony was relevant, and we find it reliable considering his qualifications. 
In admitting it, the trial court did not act unreasonably or without regard to any guiding rules and
principals. Having determined that the trial court did not abuse its discretion, we need not
conduct a harm analysis. (4) We overrule appellant's fifth point of error.


Improper References to Relative Wealth of Parties

 By its sixth point of error, Dreamers complains that Jaquez improperly invited the
jury to consider the relative wealth of the parties on more than one occasion during trial. 
Dreamers contends that these references to Dreamers' financial status were efforts to incite bias
and prejudice against Dreamers and to evoke sympathy for Jaquez. Dreamers contends that these
references were incurably prejudicial. See National Union Fire Ins. Co. v. Kwiatkowski, 915
S.W.2d 662, 664 (Tex. App.--Houston [14th Dist.] 1996, no writ) (plaintiff's repeated references
to parties' relative financial conditions was harmful error). We disagree.

 All the references appellant cites in its brief involve Jaquez's examination of
Douglas Richards, Jr., the president of Dreamers. At no point during the questioning did
Jaquez's attorney compare, or ask Richards to compare, the net worth or relative financial
conditions of the parties. Jaquez's counsel only questioned Richards about the number and kinds
of safety precautions that Dreamers could afford to implement, considering the degree of risk
presented by the condition. These questions were relevant with regard to the cost-benefit analysis
that is necessarily involved in any premises liability action when determining whether a defendant
has acted reasonably. All the cases appellant cites in support of its argument involve instances
where a plaintiff's attorney was permitted, over the defendant's objection, to incite bias and
prejudice against the defendant and evoke sympathy for the plaintiff by eliciting irrelevant
testimony concerning the parties' relative financial conditions. Here, there is nothing in the
record to indicate that Jaquez's counsel suggested, either implicitly or explicitly, that the jury
consider the parties' relative financial conditions. Furthermore, the questions and resulting
testimony were highly relevant to a material issue of fact--the reasonableness of Dreamers'
actions--and they were in no way unduly prejudicial. Having reviewed all of the references
appellant cites in the record, we conclude that Jaquez's questions were proper and that the trial
court's decision to overrule appellant's objections was not error, much less harmful error. We
overrule appellant's sixth point of error.


Damages

 Finally, appellant complains in its seventh point of error that the trial court's
judgment was improper because it awarded Jaquez future damages without reducing those
damages to present value. (5) Appellant complains that because the jury was not told what discount
rate to apply, it was unable to reduce future damages to present value. We disagree.

 First, we observe that appellant never requested an instruction on the applicable
discount rate; therefore, any complaint of the trial court's failure to submit the issue or instruction
is waived. See Tex. R. Civ. P. 278; Castleberry v. Branscum, 721 S.W.2d 270, 276 (Tex. 1986). 
We will nevertheless briefly address the merits of appellant's argument, notwithstanding this
failure to preserve error.

 Texas law does not require specific evidence of the discount rate, although a trial
court may determine the discount rate and perform the present value calculations. See In re
Gonzales, 993 S.W.2d 147, 160 (Tex. App.--San Antonio 1999, pet. denied). Here the jury was
asked, as directly set out in the pattern jury charge, "What sum of money, if paid now in cash,
would fairly and reasonably compensate [Delia Jaquez] for [her] injuries, if any, that resulted
from the occurrence in question?" See State Bar of Texas, Texas Pattern Jury Charges--Personal
Injury Damages--Basic Question PJC 80.2 (1998) (emphasis added). The jury was instructed not
to include interest on any amount of damages that it found and not to include damages for one
element in computing any other element. Thus, the jury was charged with calculating a specific
amount that, as of the day of the verdict, would compensate Jaquez for her injuries--both past and
future. By its very nature, this question required the jury to take into account the time value of
money and discount the future damages to a present-day dollar amount. Although the question
is simply stated and makes no reference to an applicable discount rate, it required the jury to make
the necessary calculation. It was therefore proper.

 The trial court then reduced the damages, taking into account the percentage of
negligence attributable to Jaquez, and added to the resulting amount the prescribed statutory rate
of prejudgment interest. Although appellant complains that Jaquez should not be allowed to
recover prejudgment interest on future damages, it is well established that prejudgment interest
is recoverable on future damages. See Johnson & Higgins, Inc. v. Kenneco Energy, Inc., 962
S.W.2d 507, 529 (Tex. 1998); C & H Nationwide v. Thompson, 903 S.W.2d 315, 324 (Tex.
1994); Tex. Fin. Code Ann. § 304.102 (West 1998). We overrule appellant's seventh point of
error.


CONCLUSION



 Having overruled all of appellant's points of error, we affirm the trial court's
judgment.



 
 

 Mack Kidd, Justice

Before Chief Justice Aboussie, Justices Kidd and B. A. Smith

Affirmed

Filed: July 27, 2000

Publish

1. Both parties agree that Jaquez was a business invitee. As a general rule, an owner or
operator breaches the duty it owes to a business invitee if (1) the owner or operator had actual or
constructive knowledge of some condition on the premises, (2) the condition posed an
unreasonable risk of harm to the invitee, (3) the owner or operator failed to exercise reasonable
care to reduce or eliminate the risk, and (4) the failure to use such care proximately caused the
plaintiff's injuries. See CMH Homes, Inc. v. Daener, 15 S.W.3d 97, 99 (Tex. 2000); Corbin v.
Safeway Stores, Inc., 648 S.W.2d 292, 296 (Tex. 1983). Generally, this duty may be discharged
by adequately warning business invitees of any unreasonable risks of harm or by making the
premises reasonably safe. See Lefmark Mgmt. Co. v. Old, 946 S.W.2d 52, 53 (Tex. 1997); State
v. Williams, 940 S.W.2d 583, 584 (Tex. 1986).
2. See, e.g., H. E. Butt Grocery Co. v. Resendez, 988 S.W.2d 218 (Tex. 1999) (mere
existence of store display, without more, is legally insufficient evidence of unreasonable risk of
harm); Seideneck v. Cal Bayreuther Assoc., 451 S.W.2d 752 (Tex. 1972) (floor rug that caused
customer to trip was not unreasonably dangerous as matter of law); Missouri Pac. R.R. Co. v.
Buenrostro, 853 S.W.2d 66 (Tex. App.--San Antonio 1993, writ denied) (no evidence to establish
that railroad ties were unreasonably dangerous condition); Medallion Stores, Inc. v. Eidt, 405
S.W.2d 417 (Tex. Civ. App.--Texarkana 1966, writ ref'd n.r.e.) (under old "no-duty doctrine,"
since abolished by the supreme court in Parker v. Highland Park, 565 S.W.2d 512 (Tex. 1978),
standard display platform was not unreasonably dangerous condition where undisputed evidence
showed it was plainly visible).
3. The fact that Bertelson testified that he had not seen anyone actually fall or injure
themselves, as appellant is eager to point out, is beside the point. These observations put
appellant on notice that the step presented a risk of harm and that an accident was reasonably
foreseeable.
4. Nevertheless, we observe that even if the admission was error, any such error was harmless
because it was not reasonably calculated to and did not result in an improper judgment. See Tex.
R. Civ. P. 44.1(a)(1). If Senkowsky's testimony had been excluded, the testimony of Jaquez and
Bertelson, along with the photographic evidence in the record, would nevertheless constitute some
evidence from which the jury could reasonably conclude that the condition presented an
unreasonable risk of harm and that appellant's negligence was a proximate cause of Jaquez's
injuries.
5. The jury found that, in all reasonable probability, Jaquez would sustain the following
damages: (1) future physical pain and mental anguish: $14,000; (2) loss of future earning
capacity: $96,720; (3) future physical impairment: $0; (4) future disfigurement: $0. The trial
court then took into account Jaquez's comparative negligence and adjusted these figures, along
with all the other damages.


y rate
of prejudgment interest. Although appellant complains that Jaquez should not be allowed to
recover prejudgment interest on future damages, it is well established that prejudgment interest
is recoverable on future damages. See Johnson & Higgins, Inc. v. Kenneco Energy, Inc., 962
S.W.2d 507, 529 (Tex. 1998); C & H Nationwide v. Thompson, 903 S.W.2d 315, 324 (Tex.
1994); Tex. Fin. Code Ann. § 304.102 (West 1998). We overrule appellant's seventh point of
error.


CONCLUSION



 Having overruled all of appellant's points of error, we affirm the trial court's
judgment.



 
 

 Mack Kidd, Justice

Before Chief Justice Aboussie, Justices Kidd and B. A. Smith

Affirmed

Filed: July 27, 2000

Publish

1. Both parties agree that Jaquez was a business invitee. As a general rule, an owner or
operator breaches the duty it owes to a business invitee if (1) the owne