Robert E. **HEMPHILL**, Appellant,

v.

**S & Q CLOTHIERS**, Appellee.

No. 18081.

Court of Civil Appeals of Texas, Fort Worth.

March 29, 1979.

Bowmer, Courtney, Burleson & Pemberton and Karen M. Neeley, Temple, for appellant.

Burrows & Cure and James O. Cure, Temple, for appellee.

## OPINION

SPURLOCK, Justice.

This is an appeal from a take nothing judgment. Robert E. Hemphill, debtor on a retail sales account, counterclaimed the sworn account action of the creditor on the account. The counter-claim alleged a violation of disclosure provisions of the Fair Credit Billing Act, 15 U.S.C. § 1637(a)(8) (Supp.1978). The trial court without a jury found no violation. It rendered judgment for the creditor for the amount of the account, plus finance charges and attorney's fees, and that the debtor take nothing by his counter-claim. The debtor does not appeal the portion of the judgment against him for the amount of the account plus finance charges. He appeals only the portions of the judgment that he take nothing and the award of attorney's fees.

We affirm in part and reverse and remand in part.

Hemphill applied for a retail charge account with S & Q Clothiers. S & Q approved his application and opened an account for him in 1973. Credit was extended for retail purchases made, and finance charges were assessed.

Although there were some months in which payment was not made, Hemphill was consistent in making payments on his account between June 1973 and October 1975. After October 1975 Hemphill became less consistent in making payments. He stopped making payments in January 1977, but the exact date collection procedures were instituted is the ultimate fact question raised by Hemphill's appeal and is disputed. However, S & Q filed its sworn account suit against him on November 15, 1977.

Hemphill bases his counter-claim on the fact that he never received a notice from S & Q outlining his right to claim his bill was erroneous and the procedure to follow in making such a declaration. This notice is required to be sent semiannually by creditors to debtors having current open end credit accounts. 15 U.S.C. § 1637(a)(8) (Supp.1978). The contents of the required notice is contained in 12 C.F.R. § 226.7(a)(9) as follows:

"IN CASE OF ERRORS OR INQUIRIES ABOUT YOUR BILL

"The Federal Truth in Lending Act requires prompt correction of billing mistakes.

"1. If you want to preserve your rights under the Act, here's what to do if you think your bill is wrong or if you need more information about an item on your bill:

"a. Do not write on the bill. On a separate sheet of paper write . . . the following:

"i. Your name and account number (if any).

"ii. A description of the error and an explanation . . . why you believe it is an error.

" . . .

"iii. The dollar amount of the suspected error.

"iv. Any other information . . . which you think will help the creditor to identify . . . the reason for your complaint or inquiry. . . ."

S & Q admits they never sent Hemphill any notice concerning his right to dispute his bill. It claims no notice was required because at the time the requirement became effective, delinquency collection procedures had been instituted on his account. The disclosure requirement became effective October 28, 1975. 12 C.F.R. § 226.7(i) covers open end credit accounts in existence on effective date of the disclosure requirement and provides as follows:

"(i) *Open end credit accounts existing on October 28, 1975.* In the case of any open end credit account in existence and in which a balance of more than $1 is outstanding at or after the closing date of the creditor's first full billing cycle after October 28, 1975, and which account is deemed to be collectible and with respect to which delinquency collection procedures have not been instituted, the

items described in paragraph (a) of this section, to the extent applicable and not previously required to be disclosed to the customer, shall be disclosed in the form prescribed in paragraph (a) of this section, and mailed or delivered to the customer not later than the time of mailing or delivery of the periodic statement required under paragraph (b) of this section for that billing cycle."

■ A thorough review of the fair credit billing notice provisions reveals that under the facts here S & Q was not required to give the notice if Hemphill's account was deemed uncollectible or if delinquency collection procedures had been instituted. It is our opinion that once it was established that Hemphill was a debtor under an open end type credit account and S & Q admitted having not sent him any of the notices, S & Q had to prove Hemphill's account was past due and that it had either deemed it uncollectible or had instituted delinquency collection procedures. In our opinion placing the burden on S & Q is consistent with the spirit of the act. Also, S & Q would have knowledge of the relevant facts.

■ Both parties have erroneously assumed that no findings of fact were made by the trial court. S & Q so states in its brief and claims that we must affirm the judgment on any theory that could sustain the judgment which is supported by the pleadings and evidence. It asks us to assume the trial court's findings support its judgment. This might be correct if there were no findings made. However, the trial court recited in its judgment the findings of fact upon which it relied. Findings of fact are usually made separately from the judgment upon the request of the party desiring to appeal the case. In our opinion this is the best practice. However, findings of fact recited in the judgment can meet the requirement of filing findings of fact. 4 McDonald, Texas Civil Practice § 16.05 (1971). We conclude the findings of fact recited in this judgment are to be given the same consideration as if they had been separately filed. The fact that they were unrequested is immaterial in this case.

■ Because the judgment states it was based on the findings recited therein, we may not make any assumptions or implications concerning findings or theories which may support the judgment. We cannot imply or assume the trial court found that S & Q deemed Hemphill's account uncollectible. We may consider only the finding that it had instituted delinquency collection procedures on his account before the billing error notice became effective.

Hemphill asserts two points of error in complaint of the portion of the judgment that he take nothing. They are as follows:

1. "The trial court reversibly erred by failing to find as a matter of law that Appellant was entitled to recovery against Appellee for Appellee's violation of the Fair Credit Billing Act, 15 U.S.C. § 1601 et seq., through Appellee's failure to send Appellant 'billing rights notices' as required.

2. "The trial court reversibly erred in that its implied finding that Appellant was not entitled to recover against Appellee for Appellee's violation of the Fair Credit Billing Act, 15 U.S.C. § 1601 et seq., was contrary to the weight and preponderance of the evidence."

■ These points fail to challenge the court's finding on the institution of collection procedures. Hemphill's argument under these points complains that the evidence fails to support S & Q's contention that it deemed the account uncollectible. Therefore, technically Hemphill's points of error fail to complain of the finding. However, we are to liberally construe points of error and arguments so that if they reasonably direct the attention of the reviewing court to the issue complained of, they will be held sufficient. Hemphill's argument about the sufficiency of the evidence concerning the deeming of the account uncollectible is readily applicable to the finding of the institution of collection procedures and has directed our attention to this issue.

Hemphill's claim that he is entitled to recover as a matter of law raises a no

evidence question. Under the facts, for Hemphill to be entitled to recover as a matter of law, either it must be conclusively established that no collection procedures were instituted or it must be shown that there is no evidence to support the trial court's finding that procedures were instituted. In either case, if there is any probative evidence which supports the finding, it must be sustained.

 In our opinion there is evidence which supports the finding. S & Q's central credit manager testified as follows:

"Q. Just refresh the Court's recollection on this. When was it that this account went into this past due status collection efforts?

"A. It was in the middle approximately of October of '75. Prior to that he was in a past due condition, he went to serious collect condition."

In our opinion past due status is synonymous with delinquency and that the institution of collection procedures can properly be inferred from the testimony. Therefore, this evidence supports the finding of the trial court.

Our attention is further directed to the sufficiency of the evidence to support the finding by Hemphill's second point of error. In addition to the testimony above, S & Q's local credit manager testified that Hemphill's account was past due. Although from the context we are able to ascertain that the time being referred to is around October of 1975, there was no time or date of the delinquency specified by this testimony. In our opinion there is a significant distinction between an account which is past due and one that has been deemed uncollectible, or that has had collection procedures instituted to collect the account. Therefore, although relevant, testimony that an account is past due, only, does not carry much weight on the issue of deemed uncollectibility or the institution of collection procedures.

Upon reviewing the record we find no evidence of any dun or collection effort of which Hemphill was aware before December 25, 1975.

We do find evidence which infers that no collection procedures had been instituted by December 25, 1975. An S & Q exhibit, showing the purchases, payments, and finance charges on the account reflects that for the 12 months preceding December of 1975, Hemphill made eight payments. The last of these payments was $100.00 credited on October 25, 1975. The report further reflects that credit was extended to Hemphill on two different occasions after December 25, 1975. Credit purchases were posted on March 25, 1976 and July 25, 1976. The report indicates that he was consistent in making payments between February 1976 and January 1977.

Hemphill testified that he was making payments in the amount of $25.00 and was being "pressed" for more money. This would infer that some collection efforts were being made at the time. However, S & Q's report indicates that the first of these $25.00 payments was posted on October 25, 1976, almost a full year after it was required to send the billing error notices. From the evidence outlined above and other evidence in the record, it is our opinion that the finding of the trial court that delinquency collection procedures were instituted is against the great weight and preponderance of the evidence and is unjust.

We, therefore, reverse the portion of the trial court's judgment that Hemphill take nothing. We sever his counter-claim and remand it for a new trial.

Although the court's judgment does not separately award attorney's fees, which is the best practice, the court recited in its judgment that a reasonable attorney's fee was $500.00. The judgment also stated that the amount of Hemphill's account which was past due is $448.86. The total amount of the judgment is $948.86. Thus, it is obvious that $500.00 attorney's fees were awarded. Hemphill claims the amount awarded was excessive and that the trial court abused its discretion in making the award in that amount. He argues that the award was against the great weight and preponderance of the evidence.

Supporting his contention, Hemphill correctly states the law concerning the factors to be considered in awarding attorney's fees. They are the nature of the case, including the complexity and difficulty thereof, the amount of time required, the skill and expertise of the lawyer, and the amount in controversy. He recognizes that attorney's fees are authorized in this case, but complains that the time S & Q's lawyer spent defending his counter-claim was erroneously included in awarding the attorney's fees. Under the facts as contained in the record, Hemphill must show that the trial court did consider the time S & Q spent defending his counter-claim. There is no finding to this effect because no additional findings of facts or conclusions of law were requested or filed in this case. Therefore, we must presume that trial court acted correctly and did not base the award on the time spent on the defense. Here the sworn account suit was contested, and usury was alleged as an affirmative defense. There is other evidence in the record which supports the court's award. After reviewing this evidence we find no abuse of discretion has been shown. We therefore overrule Hemphill's point of error on attorney's fees and affirm the portion of the trial court's judgment against Hemphill for the amount of the sworn account, including finance charges, and attorney's fees.

We affirm the portion of the trial court's judgment relating to appellee's sworn account. Having found that the trial court's finding that appellee had instituted delinquency collection procedures on appellant's account to be against the great weight and preponderance of the evidence, we reverse the portion of the trial court's judgment that appellant take nothing on his counter-claim, sever the counter-claim, and remand it for a new trial.