**AFFIRMED as MODIFIED; REVERSE and REMAND in part; and Opinion Filed February 4, 2022**



**In The**

**Court of Appeals**

**Fifth District of Texas at Dallas**

**No. 05-20-00819-CV**

**PAUL YODER SHULTZ, JR., Appellant**

**V.**

**JENNIFER ROYAL SHULTZ, Appellee**

**On Appeal from the 301st Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DF-16-13529**

## MEMORANDUM OPINION

Before Justices Pedersen, III, Goldstein, and Smith
Opinion by Justice Smith

This is the second appeal between appellant Paul Yoder Shultz, Jr. and appellee Jennifer Royal Shultz regarding their marital residence after the trial court entered a Final Decree of Divorce on November 29, 2017.[1]

In this appeal, the parties dispute whether the trial court's October 1, 2020, post-divorce order (October 2020 Order) dividing the net proceeds from the sale of the marital residence improperly altered, modified, or changed the Final Decree.

---

[1] *Shultz v. Shultz*, No. 05-18-00876-CV, 2019 WL 2511245, at *3 (Tex. App.—Dallas June 18, 2019, no pet.) (mem. op.).

Appellant also challenges the trial court's award of attorney's fees as sanctions, and its award of costs to the receiver who did not ultimately sell the home.

We conclude the trial court abused its discretion by dividing the net proceeds from the sale of the marital residence in a manner contrary to the plain language of the Final Decree, the trial court abused its discretion by awarding attorney's fees as sanctions, and the record is sufficient to support the award of costs to the receiver.

Accordingly, we reverse the trial court's October 2020 Order, in part, and render judgment that each party receive $209,744.97, which is a 50/50 split of the net sale proceeds ($430,433.37) from the sale of the marital residence after subtracting the receiver's costs ($10,943.43)[2] (($430,433.37-$10,943.43)/2). Additionally, we reverse the trial court's award of attorney's fees as sanctions and, therefore, modify the judgment to delete $46,853.00. We reverse and remand this cause to the trial court for consideration of appellate attorney's fees, if any, that should be awarded to appellant for partially prevailing on appeal. In all other respects, the October 2020 Order is affirmed.

## Background

The underlying facts leading to the second appeal between these parties are well-known; therefore, we include only a brief recitation of the background facts and the facts necessary to the disposition of this appeal. TEX. R. APP. P. 47.1.

---

[2] The Final Decree requires the receiver's costs be split 50/50 between the parties; therefore, each party is responsible for $5,471.715.

The trial court signed the Final Decree on November 29, 2017. When the parties could not agree on a sales price for their marital residence, the trial court appointed Joe Amberson as receiver. Amberson subsequently asked the trial court to confirm the sale of the residence to appellee for $900,000. Appellant objected to the confirmation. Nevertheless, the trial court confirmed the sale, and appellant appealed.

In the first appeal, appellant argued the trial court abused its discretion by appointing a receiver and giving him the authority to set the sales price of the maritalresidence because the Final Decree required appellant and appellee to mutually agree to the sales price. *See Shultz v. Shultz*, No. 05-18-00876-CV, 2019 WL 2511245, at *3 (Tex. App.—Dallas June 18, 2019, no pet.) (mem. op.). We agreed with appellant and vacated the orders appointing a receiver and confirming the sale of the marital residence. *Id*. We remanded to the trial court for further proceedings. *Id*. On remand, the trial court removed Amberson as receiver and appointed Craig Penfold.

On June 15, 2020, appellee filed her motion to reconcile expenses incurred on the residence post-divorce. In the motion, she requested that upon closing of the sale of the home, the closing agent divide the net proceeds 50/50 as stated in the Final Decree and "then from [Appellant's] portion pay to [Appellee] One Hundred Nine Thousand Forty-Four and 29/100 Dollars ($109,044.29) to equalize expenses paid on the residence and for recovery of attorney's fees incurred since August 1,

2018." In her subsequent amended motion to reconcile expenses, appellee sought reimbursement for the mortgage, taxes, and insurance she paid on the home prior to its sale. Two days later, appellant filed a motion to distribute the net sales proceeds in which he asked the court to distribute the funds pursuant to the Final Decree. He subsequently filed a special exception and motion to strike appellee's motion to reconcile expenses because the Final Decree did not contemplate the expense equalization she requested.

On July 9, 2020, the trial court signed a decree confirming the sale for $1,050,000.00. On July 30, 2020, the trial court signed an interlocutory order regarding funds deposited in the registry of the court, in part, "in an effort to narrow the issues between the parties and bring this matter to closure." In relevant part, the trial court found that $430,433.43, the net sale proceeds from the marital residence, was deposited in the court's registry. It concluded there was no dispute between the parties about the distribution of $271,085.00; thus, it divided this amount 50/50 and ordered each party receive $135,542.00. The court then took under advisement its ruling on the amended motion to reconcile expenses incurred on the marital residence post-divorce and Amberson's motion to recover his costs as receiver.

On October 1, 2020, the trial court signed another order recognizing the money previously disbursed and ordering disbursement of an additional $24,025.16 to appellant, $124,380.78 to appellee, and $10,943.43 to Amberson. It further

–4–

awarded $46,853.00 in attorney's fees to appellee as sanctions against appellant. This appeal followed.

## Sufficiency of Evidence Supporting Receiver's Costs

In his third issue, appellant argues the evidence is factually insufficient to support the trial court's award of costs incurred by Amberson while acting as receiver. Appellee responds the evidence supports the award. We address this argument first because it is relevant to appellant's first issue regarding distribution of the net sales proceeds of the marital residence.

When a party attacks the factual sufficiency of the evidence pertaining to a finding on which the party did not have the burden of proof, we may set aside the finding only if, after considering all the evidence, it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986) (per curiam); *Harris Cty. v. Coats*, 607 S.W.3d 359, 380–81 (Tex. App.—Houston [14th Dist.] 2020, no pet.). The amount of evidence necessary to affirm is far less than the amount necessary to reverse a judgment. *Coats*, 607 S.W.3d at 381.

We apply this standard mindful that this Court is not a factfinder. *Maritime Overseas Corp. v. Ellis*, 971 S.W.2d 402, 407 (Tex. 1998). The trier of fact is the sole judge of witness credibility and the weight afforded their testimony. *City of Keller v. Wilson*, 168 S.W.3d 802, 819–20 (Tex. 2005). Therefore, we may not pass

upon the witnesses' credibility or substitute our judgment for that of the factfinder, even if the evidence would also support a different result.  *Coats*, 607 S.W.3d at 381.

Appellant first complains that because Amberson did not file his bond or take his receiver oath before hiring an appraiser, inspector, and lawyer, Amberson incurred costs as an individual and not pursuant to the trial court's mandate as receiver.  However, our review of the extensive record fails to show appellant timely objected or filed a motion challenging Amberson's failure to file the bond or his oath before performing certain duties as receiver.  *See* TEX. CIV. PRAC. & REM. CODE ANN. §§ 64.022–.023.

Instead, the record indicates he raised these complaints months after Amberson's receiver appointment, and appellant's references were not specific objections or arguments that would have put the trial court on notice that appellant was complaining about the arguments he now raises on appeal.  Thus, we conclude appellant has not preserved these arguments for review and, therefore, cannot support his sufficiency challenge.  *See* TEX. R. APP. P. 33.1; *see also In re Marriage of Davis*, 418 S.W.3d 684, 689 (Tex. App.—Texarkana 2012, no pet.) (concluding appellant waived argument challenging receiver's failure to take oath prior to performing duties when he waited four months to complain to trial court).

We next consider the sufficiency of the evidence regarding Amberson's costs. The Final Decree provided that "If the Marital Residence is not listed within the prescribed period of time, Joe Amberson is appointed the receiver to sell the home

–6–

and Paul Yoder Shultz Jr. and Jennifer Royal Shultz shall split such costs 50/50." On July 17, 2020, Amberson filed a motion to recover costs. In the motion, he requested reimbursement for the following costs incurred:

    A. Appraisal Fees-Hagan Appraisal Services, Inc.         $600.00

    B. Inspection Fees-Will Hodges Inspections            $845.00

    C. Legal Fees-Addison Wilson III, DFW Law Offices PLLC   $9,500.00

                                      Total Expenses   $10,945.00

He attached a statement for the legal services rendered from July 1, 2019 through July 31, 2019; however, he did not provide an itemized bill.

Amberson testified without objection during the July 21, 2020 hearing that he incurred costs for the appraisal service, $845.00 for an inspection, and $9,500.00 in legal fees for a real estate attorney who assisted in his attempt to close the marital residence for sale. He testified his costs totaled $10,945.00. He emphasized that this amount did not include any charges for his time expended trying to sell the marital residence because he was not successful; however, he requested reimbursement for his out-of-pocket costs for the professionals he engaged to help him in his capacity as receiver.

We recognize Amberson did not include the invoice for Hagan's appraisal at the July 21, 2020 hearing; however, the invoice was introduced in prior proceedings without objection. The invoice noted the $600.00 full appraisal fee. Appellant did

not provide any evidence disputing the amount. Thus, the evidence was factually sufficient to support Amberson's recovery of this cost.

Similarly, the inspection report was repeatedly admitted into evidence in prior hearings. Although the report does not indicate the cost of the inspection, Amberson testified it cost $845.00. Appellant neither objected to Amberson's testimony nor presented any evidence disputing the amount. The trial court, as the judge of witness credibility and the weight afforded his testimony, was free to believe Amberson's testimony regarding the cost of the inspection. *City of Keller*, 168 S.W.3d at 819–20. Therefore, we conclude the evidence was factually sufficient to support this cost.

Lastly, appellant argues the "document [Amberson] attached to his filing had no breakdown of the attorney's fees, but merely shows a balance due"; therefore, the evidence is factually insufficient. He further asserts that Amberson's testimony was self-serving and conclusory.

Amberson testified without objection that he incurred legal fees from Adison Wilson, Esq, "a noted real estate lawyer," who assisted him in his attempt to close on the marital residence. He explained it was necessary to hire an attorney after it got "gummed up by the fact that Mr. Shultz filed a lis pendens." He testified he needed help "negotiating and/or dealing with the title company, trying to navigate that to close the property."

Amberson attached a "statement for legal services rendered 7/01/2019 through 7/31/2019" to his motion to recover costs. It indicated the firm charged

–8–

$400.00 per hour for attorney services and $100.00 for paralegal hours. The amount incurred totaled $9,500.00. The statement did not, however, detail the legal work performed, the reason for it, or when it was performed.

After reviewing the evidence that supports and is contrary to the trial court's ruling, we cannot conclude the evidence is so weak "as to be clearly wrong and unjust." *See Cain*, 709 S.W.2d at 176. Amberson testified to his costs incurred, explained the reasons for them, and provided supporting documentation. Appellant did not present any evidence challenging these costs.

In reaching this conclusion, we are mindful of recent supreme court case law clarifying a party's burden and the necessary evidence needed to survive a sufficiency challenge to an attorney's fee award. *See Rohrmoos Venture v. UTSW DVA Healthcare, LLP*, 578 S.W.3d 469, 498, 501–02 (Tex. 2019). However, the trial court awarded Amberson $9,500.00 as *costs* incurred in his role as receiver and not as an award of attorney's fees. Therefore, we need not engage in the more stringent *Rohrmoos* analysis when considering the sufficiency of evidence to support costs.

Finally, we are likewise unpersuaded by appellant's argument that the evidence is otherwise factually insufficient because Amberson's testimony was internally inconsistent and unclear. The trial court was the judge of Amberson's credibility and the weight to give his testimony. *See City of Keller*, 168 S.W.3d at

819–20.  We may not substitute our judgment regarding witness credibility even if the evidence would support a different result.  *Coats*, 607 S.W.3d at 381.

Accordingly, after considering all the evidence, the trial court's award of $10,943.43 in costs is not so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust.[3]  *Cain*, 709 S.W.2d at 176; *Coats*, 607 S.W.3d at 380–81.  We overrule appellant's first issue.

### Post-Divorce Order

In his first issue, appellant argues the trial court erred because it improperly deducted (1) appellee's mortgage, taxes, and insurance expenses during the time appellee lived in the residence, (2) appellant's mortgage and repair costs, and (3) Amberson's incurred costs prior to dividing the net sale proceeds per the Final Decree.  He contends none of these deductions fit within the Final Decree's definition of "net sales proceeds"; therefore, the trial court's October 2020 Order improperly modified or altered the Final Decree.  Appellee responds "net proceeds," as defined in the Final Decree, expressly contemplates such deductions.

We review post-divorce orders, including orders by which the trial court purportedly modifies a decree, for an abuse of discretion.  *In re Marriage of Pyrtle*, 433 S.W.3d 152, 159 (Tex. App.—Dallas 2014, pet. denied); *see Interest of C.S.B.*, No. 05-19-00627-CV, 2020 WL 2715188, at *2 (Tex. App.—Dallas May 26, 2020,

---

[3] Appellee testified during the hearing that she did not oppose Amberson's recovery of his costs.

no pet.) (mem. op.). A trial court abuses its discretion if it acts without reference to any guiding rules and principles or acts arbitrarily or unreasonably. *Cire v. Cummings*, 134 S.W.3d 835, 838–39 (Tex. 2004).

Section 9.006 of the family code allows a trial court to render further orders to enforce the division of property made or approved in the divorce decree to assist in the implementation of or to clarify the prior order. *See* TEX. FAM. CODE ANN. § 9.006(a). The court may specify more precisely the manner of effecting the property division previously made or approved. *Id.* § 9.006(b). However, a trial court "may not amend, modify, alter, or change the division of property made or approved in the decree of divorce." *Id.* § 9.007(a).

An agreement between parties as to property division is treated as a contract, and we construe it as a whole to harmonize and give effect to the entire decree. *Shanks v. Treadway*, 110 S.W.3d 444, 447 (Tex. 2003). If the decree, when read as a whole, is unambiguous as to the property's disposition, the court must effectuate the decree in light of the literal language used. *Id.*

Here, neither party pleaded ambiguity, and this Court previously concluded the Final Decree was unambiguous. *See Shultz*, 2019 WL 2511245, at *3 ("Neither party claims that the decree is ambiguous, and we agree that it is not."). Thus, we must consider the plain, literal language used in the Final Decree to determine whether the trial court's October 2020 Order clarified or instead improperly amended, modified, altered, or changed the property division per the Final Decree.

The Final Decree included the following provision regarding the marital residence:

> 6.    The net sale proceeds (defined as the gross sales price less cost of sale and full payment of any mortgage indebtedness or liens on the property) shall be distributed as follows:  Each party is to receive fifty percent of the net sale proceeds.

On July 9, 2020, the trial court held a hearing on appellee's motion to reconcile expenses and appellant's motion to distribute net sale proceeds.  During the hearing, appellee introduced an exhibit titled, "House Payments Made by Jennifer Shultz," detailing the dates of payments for the mortgage, homeowners insurance/repairs, and property tax/adjustments.   The exhibit indicated she spent $124,377.84 from November 1, 2017 to January 31, 2020.[4]

The trial court's October 2020 Order states that "the expenses incurred by the parties that enured to the benefit of the property shall be deducted from the sale proceeds received."  The court then ordered disbursement of the funds as follows: $26,025.16 to appellant; $124,380.78 to appellee; and $10,943.43 to Amberson.  It then ordered the remaining funds from the sale of the residence split 50/50.

The language of the Final Decree is clear and unambiguous.  It likewise provides a specific definition of "net sale proceeds."  Appellee's payments for homeowner's insurance, repairs, and property taxes, were not "costs of sale" or

---

[4] Appellant acknowledges this number is slightly less than the trial court's $124,380.78 award but has not made a separate argument regarding the discrepancy, and it is inconsequential for disposition of this appeal.

–12–

"payment of any mortgage indebtedness or liens on the property." Appellee's testimony during the hearing that she "believed" property taxes are costs of sale is irrelevant to our review of an unambiguous document, which is limited to its plain language.

Reimbursement for her mortgage payments were not "costs of sale." They likewise were not "full payment of any mortgage indebtedness or a property lien." Although appellee lived in the residence during the time she paid the mortgage, the language of the Final Decree does not provide for reimbursement of her expenses. In fact, the trial court crossed out the section stating that she "shall continue to make all payments of principal, interest, taxes and insurance on the property during pendency of the sale." Thus, there was no order requiring her to make mortgage payments. Moreover, during the hearing, appellee testified there was not a lien or a mortgage owed to her as a mortgagor. She admitted there was nothing in the real property record that clouded the title in her name. Thus, she was not entitled to any reimbursement for her mortgage payments. Similarly, appellant was not entitled to reimbursement for any of his mortgage payments because they were not "costs of sale."

In reaching this conclusion, we reject appellee's reliance on the general definition of "net sales proceeds," which she describes as "represent[ing] the difference between gross income or proceeds and expenses." *See Baylor Miraca Genetics Labs., LLC v. Perthuis*, No. 01-19-00095-CV, 2020 WL 7062321, at *5

(Tex. App.—Houston [1st Dist.] Dec. 3, 2020 pet. granted) (mem. op.); *see also Net Sales*, MERRIAM-WEBSTER ONLINE DICTIONARY, www.merriam-webster.com/dictionary/net%20sales (last visited February 2, 2022). We do not look to an alternate definition when the Final Decree provides a clear and unambiguous definition. *See Hagen v. Hagen*, 282 S.W.3d 899, 901 (Tex. 2009) ("If the decree is unambiguous, the Court must adhere to the literal language used."). To the extent appellee argues the Final Decree lacked clarity as to who was responsible for the mortgage and taxes prior to sale, appellee did not appeal the Final Decree challenging lack of clarity, and we reject her invitation to now read such language into the Final Decree.

Finally, the trial court incorrectly deducted appellant's repair costs. Although these costs certainly prepared the marital residence for sale, they were not themselves "costs of sale."

We conclude the trial court reallocated the net sales proceeds of the marital residence in contradiction to the plain language of the Final Decree. This reallocation impermissibly deducted appellant's expenses for mortgage and repairs and appellees' payments towards the mortgage, taxes, and insurance prior to splitting the net sales proceeds 50/50. Accordingly, the trial court abused its discretion by violating section 9.007. *See* TEX. FAM. CODE ANN. § 9.007 (trial court "may not amend, modify, alter, or change the division of property made or approved in the decree of divorce"). We sustain, in part, appellant's first issue.

Finally, appellant argues the trial court abused its discretion by deducting Amberson's receiver costs as part of the "costs of sale" because Amberson did not sell the residence. We disagree. The Final Decree provided that Amberson was "appointed as receiver to sell the home," and appellant and appellee "shall split such costs 50/50." The recovery of his costs was not contingent on successfully selling the marital residence. Because the Final Decree is unambiguous, we must defer to the literal language used and not read language into it. *See Shanks*, 110 S.W.3d at 447. As such, his incurred costs for the inspection, appraisal, and attorney's fees prior to the sale are "costs of sale," as these actions and related costs were necessary to carrying out his receivership duties and attempting to sell the marital residence. Because the Final Decree allowed Amberson to recover his costs regardless of whether he sold the marital residence, such costs are split 50/50, and we previously concluded his evidence is factually sufficient to support the trial court's cost award, the trial court acted within its discretion by deducting these "costs of sale" per the Final Decree. We overrule, in part, appellant's first issue.

## Award of Attorney's Fees as a Sanction

In his second issue, appellant argues the trial court abused its discretion by awarding $46,853.00 in attorney's fees as a sanction. Appellee responds the record indicates appellant engaged in harassing behavior; therefore, the trial court acted within its discretion by awarding attorney's fees as a sanction.

We review the imposition of sanctions under an abuse of discretion standard. *See Low v. Henry*, 221 S.W.3d 609, 614 (Tex. 2007); *see also Owen v. Jim Allee Imports, Inc.*, 380 S.W.3d 276, 282 (Tex. App.—Dallas 2012, no pet.). An appellate court may reverse the trial court's ruling only if the trial court acted without reference to any guiding rules and principles, such that its ruling was arbitrary or unreasonable. *Cire*, 134 S.W.3d at 838–39. To determine if the sanctions were appropriate or just, we must ensure that there is a direct nexus between the improper conduct and the sanction imposed. *Spohn Hosp. v. Mayer*, 104 S.W.3d 878, 882 (Tex. 2003); *Owen*, 380 S.W.3d at 282.

On July 3, 2018, appellee filed a motion for sanctions pursuant to rule of civil procedure 13 and civil practice and remedies code section 10. She alleged that appellant continued to file frivolous pleadings in bad faith and with no basis in law or fact. She further alleged it was appellant's "sole purpose of pursuing this course [] to harass Movant, needlessly drive up her litigation expenses and to significantly interfere with the Court's legitimate exercise of one of its core functions, the disposition of the marital asset under the current receivership order." However, on July 8, 2019, appellee filed a motion to withdraw her July 3, 2018 sanctions motion in part. Her withdrawal occurred after appellant succeeded in the first appeal.

On December 27, 2019, despite no pending motion for sanctions, the trial court entered an interim order that included, in relevant part, a finding that appellant "intentionally harassed, pestered, bullied and frustrated [appellee] until she left the

–16–

[marital residence]." It further found that appellant "knowingly and with malice thwarted the ability of the receiver to conduct his duties and responsibilities as set forth in the agreed order appointing receiver."

On January 23, 2020, appellee filed a second motion for sanctions. In the motion, appellee referenced the trial court's finding of harassing behavior in the interim order. Specifically, she alleged the following:

> Based upon the Court's findings in its Interim Orders, it is clear that the sole purpose of [Appellant] and his counsel in continuing to unreasonably withhold consent to sale of the Marital Residence is to needlessly drive up [Appellee's] litigation expenses, harass, pester, and bully [Appellee], and to interfere with the Court's legitimate exercise of its duty to dispose of the Marital Residence.

She further alleged she incurred additional expenses she would not have incurred "had the Marital residence closed on July 30, 2018." She then sought sanctions and an award of attorney's fees against appellant and his attorney under chapter 10 of the civil practice and remedies code and the trial court's inherent power. Appellant filed special exceptions and a motion to strike her motion. The trial court subsequently ordered $46,853.00 in attorney's fees as a sanction.

Texas Civil Practice and Remedies Code chapter 10 permits sanctions upon a showing that the pleading or motion (1) lacked a reasonable basis in law or fact or (2) was brought for an improper purpose, including to harass, cause unnecessary delay, or cause needless increase in litigation costs. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 10.001; *see also Daniels v. Indem. Ins. Co. of N. Am.*, 345 S.W.3d 736, 741 (Tex. App.—Dallas 2011, no pet.). Section 10.005 provides that a court "shall

–17–

describe in an order imposing a sanction under this chapter the conduct the court has determined violated Section 10.001 and explain the basis for the sanction imposed." *See* TEX. CIV. PRAC. & REM. CODE ANN. § 10.005. It was appellee's burden to overcome the presumption that appellant filed his pleadings in good faith. *Malouf v. Elana Spitzberg Trust*, No. 05-15-00824-CV, 2016 WL 4158890, at *2 (Tex. App.—Dallas Aug. 5, 2016, no pet.) (mem. op.).

Although the October 2020 Order is silent as to whether the trial court imposed the sanction per chapter 10 or its inherent power, we conclude the record does not support a sanction under either option.

Chapter 10 applies only to frivolous pleadings and motions. TEX. CIV. PRAC. & REM. CODE ANN. § 10.001; *see R.M. Dudley Const. Co. v. Dawson*, 258 S.W.3d 694, 709 (Tex. App.—Waco 2008, pet. denied). Appellee's second sanctions motion does not describe with any particularity the motions or pleadings that appellant allegedly filed for an improper purpose or to harass her. Further, the trial court's order imposing a sanction under chapter 10 must describe the conduct that violated section 10.001 and explain the basis for the sanction imposed. TEX. CIV. PRAC. & REM. CODE ANN. § 10.005. Here, the final judgment fails to provide the necessary findings and explanations

To the extent appellee relies on the interim order, her reliance is misplaced. The trial court entered that interim order after appellee withdrew her first motion for sanctions; therefore, the trial court had no sanctions motion on file at the time of the

interim order. Further, the trial court's interim order did not specify any particular motion or pleading appellant allegedly filed for an improper purpose or to harass appellee.

Sanctions under chapter 10 fail for another reason. A trial court must hold an evidentiary hearing to make the necessary factual determinations about the party's and attorney's motives and credibility. *R.M. Dudley Const. Co., Inc.*, 258 S.W.3d at 709. Without an evidentiary hearing, the trial court has no evidence before it to determine that a pleading was filed in bad faith or to harass. *Id*. The pleading alone cannot establish that the represented party or his attorney filed it in bad faith or to harass. *Id*. Rather, the party moving for sanctions must prove the pleading party's subjective state of mind. *Id*.

The record here contains no such evidence. Although appellee testified during the July 9, 2020 hearing that the interim order included a finding of appellant's harassing behavior, her testimony is not competent evidence of appellant's subjective state of mind. Moreover, she did not testify during a sanctions hearing, but instead during the hearing on the motions to reconcile expenses and to distribute net sales proceeds.

We conclude appellee failed to carry her burden to show that appellant or his attorney violated chapter 10. Therefore, to the extent the trial court awarded attorney's fees as sanctions pursuant to chapter 10, it abused its discretion.

Courts have inherent power to sanction "where necessary to deter, alleviate, and counteract bad faith abuse of the judicial process." *In re Estate of Powell*, No. 05-19-00689-CV, 2020 WL 4462666, at *7 (Tex. App.—Dallas Aug. 4, 2020, no pet.) (mem. op.). This includes "any significant interference with the traditional core functions of the court." *Union Carbide Corp. v. Martin*, 349 S.W.3d 137, 147 (Tex. App.—Dallas 2011, no pet.). These core functions include hearing evidence, deciding issues of fact raised by the pleadings, deciding questions of law, rendering final judgments, and enforcing judgments. *Id*.

When assessing sanctions under its inherent power, the trial court must make factual findings, based on evidence, that the conduct complained of significantly interfered with the court's legitimate exercise of its core functions. *Id*. at 148. The supreme court recently emphasized that "[b]ecause inherent powers are shielded from direct democratic controls, and because of their very potency, inherent powers must be exercised with restraint, discretion, and great caution." *Brewer v. Lennox Hearth Prods., LLC*, 601 S.W.3d 704, 718 (Tex. 2020) (internal quotations and footnotes omitted). "To that end, invocation of the court's inherent power to sanction necessitates a finding of bad faith." *Id*. The court explained:

> Bad faith is not just intentional conduct but intent to engage in conduct for an impermissible reason, willful noncompliance, or willful ignorance of the facts. "Bad faith" includes conscious doing of a wrong for a dishonest, discriminatory, or malicious purpose. Errors in judgment, lack of diligence, unreasonableness, negligence, or even gross negligence—without more—do not equate to bad faith. Improper motive, not perfection, is the touchstone.

–20–

*Id.* The record contains no finding of bad faith by the trial court for appellant's alleged sanctionable conduct. As previously stated, appellee's reliance on the trial court's sua sponte interim order is misplaced as there was no pending sanctions motion at the time the court signed the order.

However, even if we considered the trial court's interim findings, they do not support sanctions under the trial court's inherent power. The interim order was signed after appellant successfully appealed Amberson's actions as receiver; therefore, to the extent the trial court found that appellant "knowingly and with malice thwarted" Amberson's ability to conduct his duties as receiver, the trial court essentially punished appellant for taking a successful appeal. A trial court may not penalize a party for taking a successful appeal by taxing him with attorney's fees should he take such action.[5] *See Rittgers v. Rittgers*, 802 S.W.2d 109, 115 (Tex. App.—Corpus Christi-Edinburg 1990, writ denied); *see also Ortiz v. O.J. Beck & Sons, Inc.*, 611 S.W.2d 860, 867 (Tex. App.—Corpus Christi 1980, no writ).

Similarly, appellee's motion also asked for fees as sanctions because appellant unreasonably withheld consent to sell the marital residence and needlessly drove up litigation costs. Again, appellant was successful in his appeal that challenged the sale based on Amberson's improper actions; therefore, appellant's withheld consent

---

[5] Appellee's attorney testified during a hearing that he was requesting fees for work from August 1, 2018 through June of 2020 as it related to the sales of the residence, which "[i]ncluded in those attorney fees [] fees incurred for the appeal, fees incurred for the various motions that were filed to remove Ms. Shultz from the residence."

was not unreasonable. The trial court could not rely on this "evidence" to support sanctions.

Appellee has not otherwise directed the Court to any evidence, and we have found none, supporting any bad faith actions by appellant that interfered with the core functions of the trial court. Accordingly, there is no direct nexus between any alleged improper conduct and the sanctions imposed. *See Spohn Hosp.*, 104 S.W.3d at 882; *Owen*, 380 S.W.3d at 282. Thus, to the extent the trial court awarded attorney's fees as a sanction based on its inherent power, it abused its discretion.

Because there is no basis in the record supporting sanctions under either chapter 10 or the trial court's inherent power, we sustain appellant's second issue.

## Appellate Attorney's Fees

In his prayer for relief, appellant requests we remand for the trial court to award appellate attorney's fees. Texas Family Code section 9.014 provides that a court "*may* award reasonable attorney's fees" in a post-divorce proceeding. *See* TEX. FAM. CODE ANN. § 9.014 (emphasis added). This statute does not entitle either party to attorney's fees; rather, it merely permits the court to award them. *See Schneider v. Schneider*, 5 S.W.3d 925, 930 (Tex. App.—Austin 1999, no pet.).

"In order to be entitled to a discretionary award of attorney's fees, the requesting party must file a pleading making that affirmative request." *Thomas v. Daniel*, No. 02-12-00397-CV, 2013 WL 3771321, at *2 (Tex. App.—Fort Worth July 18, 2013, no pet.) (mem. op.). Appellant requested attorney's fees through trial

and appeal in his first amended special exceptions and motion to strike filed on June 22, 2020.

Because appellant has partially succeeded on his appeal and affirmatively requested appellate fees in a filed pleading, we agree appellant is entitled to a remand for consideration of appellate attorney's fees. We emphasize the award of such fees on remand is discretionary. *See* TEX. FAM. CODE ANN. § 9.014; *see also Schneider*, 5 S.W.3d at 930.

Accordingly, we remand to the trial court for a determination of the reasonable amount of appellate attorney's fees, if any, to be awarded appellant in light of the fact he partially succeeded on appeal. TEX. R. APP. P. 43.2 (d).

**Conclusion**

We reverse the trial court's October 2020 Order, in part, and render judgment that each party receive $209,744.97, which is a 50/50 division of the net sale proceeds ($430,433.37) from the sale of the marital residence after subtracting the receiver's costs of sale ($10,943.43) (($430,433.37 - $10,943.43) / 2). TEX. R. APP. P. 43.2(c). We further reverse the award of attorney's fees as sanctions and, therefore, modify the judgment to delete $46,853.00. TEX. R. APP. P. 43.2(b).

We reverse and remand to the trial court for consideration of appellate attorney's fees, if any, that should be awarded to appellant for partially prevailing on appeal. TEX. R. APP. P. 43.2(c).

In all other respects, the October 2020 Order is affirmed.


/Craig Smith/
CRAIG SMITH
JUSTICE

200819F.P05



# Court of Appeals
## Fifth District of Texas at Dallas

## JUDGMENT

PAUL YODER SHULTZ, JR.,
Appellant

No. 05-20-00819-CV    V.

JENNIFER ROYAL SHULTZ,
Appellee

On Appeal from the 301st Judicial
District Court, Dallas County, Texas
Trial Court Cause No. DF-16-13529.
Opinion delivered by Justice Smith.
Justices Pedersen, III and Goldstein
participating.

In accordance with this Court's opinion of this date, the October 1, 2020 order of the trial court is **MODIFIED** as follows:

We **REVERSE** the award of attorney's fees as sanctions and **DELETE** the $46,853.00 award of attorney's fees as sanctions.

We **REVERSE**, in part, and **RENDER** judgment that Paul Yoder Shultz, Jr. and Jennifer Royal Shultz each receive $209,744.97 from the net sales proceeds of the marital residence.

We **REVERSE** and **REMAND** to the trial court for consideration of Paul Yoder Shultz, Jr.'s appellate attorney's fees, if any.

In all other respects, the October 1, 2020 order is **AFFIRMED**.

We **ORDER** that each party bear their own cost of this appeal.

After the judgment and all costs have been paid, we **DIRECT** the Dallas County District Clerk to release the balance, if any, of any remaining cash bond paid by Paul Yoder Shultz, Jr.

Judgment entered February 4, 2022.